NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0152n.06
Filed: February 20, 2009

No. 06-1569

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| GREGORY ALEXANDER, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Eastern |
| DAVID SMITH, WARDEN, | ) | District of Michigan |
| | ) | |
| Respondent-Appellee. | ) | |

Before:         BOGGS, Chief Judge; KETHLEDGE, Circuit Judge; and THAPAR, District Judge.*

PER CURIAM.  Gregory Alexander was convicted of first-degree murder and sentenced to life imprisonment without the possibility of parole.  He appeals the federal district court's dismissal of his petition for a writ of habeas corpus, which he filed pursuant to 28 U.S.C. § 2254.  Because we find that all of the claims now before us were procedurally defaulted and that the petitioner has failed to demonstrate cause and prejudice or a miscarriage of justice, we affirm the district court's dismissal.

I

On July 2, 1998, a circuit court jury in Calhoun County, Michigan convicted the petitioner of first-degree murder, stemming from the shooting of Termain Watson on May 2, 1996, in Battle

_____

* The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

No. 06-1569
Alexander v. Smith

Creek, Michigan. On direct review before the Michigan Court of Appeals, he raised six claims, each

arguing that the proceedings had violated his rights. In particular, he argued that (1) the prosecution

improperly infringed on his right under the Fifth and Fourteenth Amendments not to testify, (2) the

trial court erred in allowing the prosecution to endorse Antonio Postell, an incarcerated fellow

prisoner, as a witness after several days of trial,[1] (3) the trial court abused its discretion when it

allowed Postell to testify, (4) the prosecution improperly made a "community protection" argument

during his closing argument, (5) the trial court improperly ordered restitution, and (6) his trial

counsel was ineffective for failing to challenge defendant's financial ability to make restitution. The

Michigan Court of Appeals denied all of his claims and affirmed his conviction. *People v.*

*Alexander*, No. 213899 (Mich. Ct. App. Feb. 8, 2000). The Michigan Supreme Court in turn

declined his request for leave to appeal, stating that it did not believe the questions presented should

be reviewed. *People v. Alexander*, 463 Mich. 860 (2000).

On collateral review in state and federal court, the petitioner raised thirteen separate claims.

Three of these claims were previously raised on direct review, and ten additional claims were raised

for the first time in collateral proceedings.

Claim I: The prosecution violated the petitioner's constitutional rights in commenting on the petitioner's decision not to testify in his own defense.

---

[1]This claim did not rest on any alleged violation of the Sixth Amendment. Rather, the petitioner's appellate counsel argued only that the endorsement came too late and prejudiced the defense, violating Alexander's right to due process and a fair trial. *See People v. Alexander*, No. 213899 (Mich. Ct. App. Feb. 8, 2000) (holding that the claim was procedurally defaulted and that in any case trial court did not abuse its discretion in allowing Postell to testify, because the prosecution only learned of Postell's existence during the trial and endorsed him as soon as possible).

Claim II: The state trial court's decision to allow Postell to testify violated the petitioner's right to due process and a fair trial.

Claim III: Prosecutor made a "community protection" argument during closing arguments that denied the petitioner due process.

Claim IV: The use of Postell's testimony at the petitioner's trial violated his Sixth Amendment right to counsel.

Claim V: The court's dismissal for cause of the only African-American juror violated the petitioner's right to an impartial jury and fair trial.

Claim VI: The failure of the court to conduct a hearing and investigate a juror's prior relationship with Postell violated the petitioner's right to an impartial jury and fair trial.

Claim VII: The failure of the state and defense to present a critical res gestae witness violated the petitioner's right to due process and a fair trial.

Claim VIII: The prosecution's use of false testimony by two witnesses violated the petitioner's right to due process and a fair trial.

Claim: IX: The petitioner was denied his right to effective assistance of counsel.

Claim X: The petitioner is entitled to an evidentiary hearing.

Claim XI: Trial court violated the petitioner's constitutional rights in failing to establish that the petitioner's waiver of his right to testify on his own behalf was free, knowing, and intelligent.

Claim XII: The cumulative effect of errors committed during the petitioner's trial demonstrate he did not receive a fair trial.

Claim XIII: The petitioner has demonstrated cause and prejudice for failing to raise the above claims at his original trial or on direct review.

As required, the petitioner first filed this motion for relief from the judgment in the Circuit Court of

Calhoun County, Michigan, where he was convicted. On September 18, 2001, the Circuit Court

declined this petition in a one-sentence order, concluding, "there is insufficient *merit* in any of the

grounds set forth in the Motion." (Emphasis added). Alexander then appealed to the Michigan Court of Appeals. On November 30, 2001, that court declined to give Alexander "leave to appeal," stating that Alexander failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). *People v. Alexander*, No. 236770 (Mich. Ct. App. Nov. 30, 2001). Alexander then appealed, for the second time, to the Michigan Supreme Court. Echoing the court of appeals, the Michigan Supreme Court issued a form order reading, "the delayed application for leave to appeal from the November 30, 2001 decision of the Court of Appeals is considered, and it is DENIED, because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Alexander*, 467 Mich. 854 (2002).

On December 6, 2002, Alexander filed a petition for habeas corpus in United States District Court for the Eastern District of Michigan. The district court dismissed claims I through III, V through VIII, and X through XII, finding that the state court invoked an independent and adequate procedural bar to review and that the petitioner failed to demonstrate cause and prejudice for the default.[2] The court also dismissed the portion of the petitioner's ineffectiveness claims (claims IX and XIII) that were unrelated to the alleged Sixth Amendment violation set forth in Claim IV. The court referred the case to a magistrate judge for an evidentiary hearing into the petitioner's remaining claims. The magistrate judge, in turn, conducted an evidentiary hearing with respect to the

---

[2]With respect to claims I through III, the United States district court noted that the Michigan Court of Appeals denied these claims as procedurally defaulted on direct review and that the petitioner had failed to demonstrate ineffective assistance of trial counsel. With respect to claims V through VIII and X through XII, the court held that the petitioner had failed to demonstrate ineffectiveness of either trial or appellate counsel for defaulting these claims.

petitioner's claim that his Sixth Amendment rights were violated by the use of a jailhouse witness who testified at his original trial about comments he said were made by Alexander after judicial proceedings had begun. In particular, the magistrate judge sought to resolve factual questions about whether the jailhouse witness was a state agent, and whether the local police or prosecutors enlisted the prisoner to solicit incriminating comments from Alexander during his murder trial. The magistrate judge filed a report concluding that the police and prosecutors had not enlisted or even encouraged the witness to elicit incriminating comments from the petitioner, and thus, the defendant's Sixth Amendment rights had not been violated. The district court adopted these findings and denied the petitioner's remaining claims.[3] Alexander requested a certificate of appealability, which the district court denied with respect to claims I through III. A certificate of appealability was granted only with respect to Claims IV through IX and XI through XIII.

II

There are two issues now before us with respect to those claims for which the petitioner was granted a certificate of appealability. First, we must determine whether these claims have been procedurally defaulted and whether the state court invoked the default as a basis for denying relief in collateral proceedings. Second, if the remaining claims were procedurally defaulted, we must determine whether the petitioner has demonstrated cause and prejudice for defaulting the claims, in

---

[3]In a slight wrinkle, the magistrate judge advised the district court that the state court had not properly invoked a procedural bar in denying the petitioner's Sixth Amendment claim. This result contradicts the district court's treatment of the same state court order denying claims V through VIII and XI through XII as procedurally defaulted. Despite this anomalous result, the district court adopted the magistrate judge's conclusions without discussion or revision of its previous order.

No. 06-1569
Alexander v. Smith

which case we can review the merits, or if a fundamental miscarriage of justice will result absent further consideration of the claims. We address each of these questions in turn.

A. Procedural Default

This court has outlined a four-part test to determine whether a claim has been procedurally defaulted in state court. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). First, we must determine whether there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule. *Id.* at 138. Second, we must determine whether the state court actually invoked this rule, applying it as a basis for declining to grant relief from the judgment. *Ibid.* With respect to Michigan state proceedings, this factor is often litigated because of the tendency of state courts to deny relief in collateral proceedings with a form one-sentence order citing a procedural rule without further explanation. *See Simpson v. Jones*, 238 F.3d 399 (6th Cir. 2000); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Abela v. Martin*, 380 F.3d 915 (6th Cir. 2004). Third, the procedural rule must be an adequate and independent ground on which the state can rely to foreclose review of a federal constitutional claim. *Maupin*, 785 F.2d at 138. This part is complicated when a state court invokes the procedural basis for declining review, but also addresses or references the merits. "An alternative holding in which a state procedural bar is a sufficient basis for the state court's judgment is adequate to preclude a claim from being raised on habeas review, even when the state court also relies on federal law." *Simpson*, 238 F.3d at 408-09. To be "adequate," a state rule must be "firmly established and regularly followed at the time it is applied." *Abela*, 380 F.3d at 921; *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001). And to be

"independent," the state court must "actually [have] relied on the rule to bar the claim at issue." *Abela*, 380 F.3d at 921. Fourth, a defaulted claim cannot be considered unless the petitioner can show cause and prejudice from the alleged claim, or a miscarriage of justice. *Maupin*, 785 F.2d at 138. A petitioner procedurally defaults claims for habeas relief if the petitioner has not presented those claims to the state courts in accordance with the state's procedural rules. If the petitioner fails to present a claim in state court, then that procedural default carries over to federal proceedings.

Whether a state court found the petitioner's claim to be procedurally defaulted is a question of law that this court reviews de novo. *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991); *Abela*, 380 F.3d at 922. There is no suggestion, even by the petitioner, that the claims now before us were brought up at trial or on direct review. They were raised for the first time in collateral proceedings, and therefore they were defaulted under MCR 6.508(D), which stipulates a state court "may not grant relief to the defendant if the motion . . . (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on [direct] appeal." As a result, there is little doubt that the first factor of finding a procedural default is well-founded. There is also little doubt as to the third factor, which queries whether the procedural bar was adequate and independent. Both the Michigan Supreme Court and the court of appeals cited MCR 6.508(D), which the Sixth Circuit has repeatedly held constitutes an adequate and independent state procedural ground foreclosing review of federal claims. *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Gonzales v. Elo*, 233 F.3d 348 (6th Cir. 2000); *Luberda v. Trippett*, 211 F.3d 1004 (6th Cir. 2000). Bolstering this conclusion is the fact that MCR 6.508(D) has been "regularly followed as of 1990," thus making it adequate.

*Simpson*, 238 F.3d at 407. Because no other conclusion is provided by these courts, it is also apparent that MCR 6.508(D) was the exclusive basis of the courts' decisions, and therefore there is no issue, as in other cases, about whether the rule at issue is an independent basis for the court's conclusion. *See, e.g.*, *id.* at 408-09.

With respect to the second factor—whether the last state court invoked the procedural grounds as a basis for the default—there is disagreement among the parties. Both the Michigan Supreme Court and court of appeals denied relief in single sentence orders, citing MCR 6.508(D). The first court to consider Alexander's collateral attack on his conviction, however, does appear to have addressed the merits. In denying Alexander's motion for relief, the Calhoun County Circuit Court did not appear to base its decision on procedural grounds. The order proclaimed, "there is insufficient *merit* in any of the grounds set forth in the Motion." (Emphasis added). It further cited MCR 6.504(B)(2), which permits a judge to dismiss a case

> If it plainly appears from the face of the materials described in subrule (B)(1) that the defendant is not entitled to relief, the court shall deny the motion without directing further proceedings. The order must include a concise statement of the reasons for the denial. The clerk shall serve a copy of the order on the defendant and the prosecutor. The court may dismiss some requests for relief or grounds for relief while directing a response or further proceedings with respect to other specified grounds.

Although procedural reasons might provide a basis for dismissal under MCR 6.504(B)(2), by no means are they an exclusive grounds for doing so.

We must determine whether the Michigan Supreme Court decision is an explained order, or if we must refer to the court of appeals or circuit court decisions in divining whether a procedural bar has been invoked. The traditional rule has been that this court will only look to the last state

court to consider the petitioner's collateral claims for the purposes of making this determination.

The Supreme Court explained in *Ylst v. Nunnemaker*:

> If an earlier opinion 'fairly appear[s] to rest primarily upon federal law,' we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place. Similarly where, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.

501 U.S. 797, 803 (1991) (citing *Coleman v. Thompson*, 501 U.S. 722, 740 (1991)). This court has

repeatedly held that even a one-sentence decision, citing MCR 6.508(D), constitutes a reasoned

decision invoking a procedural bar. In *Simpson*, for example, this court held a terse order by the

Michigan Supreme Court referencing MCR 6.508(D), nearly identical to the one at issue in this case,

was sufficient to bar federal habeas review absent some showing of cause and prejudice or a

miscarriage of justice. 238 F.3d at 407-08. The petitioner in *Simpson* argued that "the state court

did not 'clearly and expressly' state that its judgment was based on a state procedural rule." *Ibid.*

Yet this court rejected that suggestion, holding, that a state court order that refers to MCR 6.508(D),

without further explanation, was nevertheless "not unexplained." *Id.* at 407-08. And because the

order of the Michigan Supreme Court constituted a decision "based solely on the state procedural

rule [such that] the 'clearly and expressly' requirement [did] not apply," *id.* at 408, the court did not

look beyond the Michigan Supreme Court order, to lower state court decisions, to determine whether

the petitioner's claims were procedurally defaulted. *Id.* at 407-08.[4]

---

[4]*Simpson* does mention the Michigan Court of Appeals decision in setting forth the case's procedural history, but does not rely on this in rendering its decision. 238 F.3d at 402-03. To the contrary, it held that courts must confine themselves only to the last state court's judgment when the

Two years later this court reached the same conclusion in *Burroughs v. Makowski*, a case in which the Michigan Supreme Court issued a similar one-sentence order invoking MCR 6.508(D) and denying relief. 282 F.3d at 414. Noting the full implications of *Simpson*, we observed that only a reference to subsection MCR 6.508(D)(3), which relates to "grounds for relief, other than jurisdictional defects," would have *unambiguously* indicated the court's decision rested on a procedural bar. *Ibid.* Following *Simpson*, however, the court held that a more specific order was unnecessary. "Though the ruling was brief and did not explicitly reference MCR 6.508(D)(3), we determined [in *Simpson*] that the Michigan Supreme Court's statement explained its order." *Ibid.*

Complicating matters is an apparent conflict within this circuit's precedent about when Michigan state courts have invoked a procedural bar, thus denying the petitioner federal habeas review unless he can show cause and prejudice or a miscarriage of justice. The holding of our 2004 decision, *Abela v. Martin*, conflicts with these still earlier decisions from our circuit. 380 F.3d 915. In *Abela*, this court was asked whether the Michigan Supreme Court invoked a procedural bar in denying the petitioner's claims in collateral proceedings. In that case, the Michigan Supreme Court issued a one-sentence order, referencing MCR 6.508(D) and denying review of the petitioner's claim. *Id.* at 920. In this respect, the facts of *Abela* are wholly consistent with *Simpson* and *Burroughs*. Yet, this court held the state court had not invoked a state procedural bar, because "the state courts below the supreme court never invoked a procedural bar here, but rather repeatedly ruled on the merits." *Id.* at 923. Indeed, in *Abela*, both the Michigan Court of Appeals and the county Circuit

---

decision is explained. *Id.* at 408.

Court referenced the merits. *Ibid.* When the Michigan Supreme Court order merely references MCR 6.508(D), *Abela* states a federal court must look beyond the one-sentence order and consider whether "the last *reasoned* state court judgment" references the merits. *Ibid.* (Emphasis added).

There are a number of facts that distinguish the case now before us from *Abela*, but it is unclear whether these differences are legally relevant or should control our analysis. While the Michigan Supreme Court orders in *Abela* and this case are indistinguishable, the state court of appeals decisions are different. In ruling upon Abela's petition, the Michigan Court of Appeals referenced the merits. In the case at bar, however, the state court of appeals issued a formulaic order along the same lines of the Michigan Supreme Court, referencing MCR 6.508(D) and making no mention of the merits. But it is unclear whether this should be the end of our analysis. After all, *Abela* states that we look to lower court decisions for guidance when the Michigan Supreme Court denies a claim with an unexplained reference to MCR 6.508(D), and there is no reason to assume this same rule should not apply when the state court of appeals issues such an order. Put another way, if the state supreme court's order is not a "reasoned decision," then the same order from the state court of appeals should not be treated as such either. Reviewing the Circuit Court's denial of Alexander's claim, the court does in fact reference the merits, which suggests if *Abela* controls this court's analysis, we should not hold that the state court properly invoked a procedural bar in denying Alexander's petition.

For this reason, we must determine whether *Abela* conflicts with *Simpson* and *Burroughs*. Although *Abela* purports to rely upon the fact that "the procedural facts of *Simpson* and *Burroughs* are distinguishable from our case," *Abela*, 380 F.3d at 923, our earlier cases held that the procedural

distinctions cited in *Abela* were legally irrelevant. In *Simpson*, this court mentions the content of the Michigan Court of Appeals and Circuit Court orders in outlining the facts of the case, but does not rely on these orders in any way in reaching the conclusion that Michigan Supreme Court's judgment is "properly explained." *Simpson*, 238 F.3d at 408. Likewise, in *Burroughs*, the court mentions the Court of Appeals order, but notes that *Simpson* held the Michigan Supreme Court order was an "explained" decision. 282 F.3d at 414. While *Abela* requires that the content of these previous orders be considered and weighed, *Simpson* and *Burroughs* stand for the proposition that they must be disregarded. *Abela* simply cannot be reconciled with this court's earlier decisions in *Simpson* or in *Burroughs*.

The Sixth Circuit's rules state that published panel opinions are binding on all subsequent panels. 6th Cir. R. 206(c). "A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir.1985); *see also United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008) (disregarding the rule set forth in two published opinions in favor of a contrary rule established by an earlier case resolving the same issue); *United States v. Moody*, 206 F.3d 609, 615 (6th Cir. 2000) ("Although we find the dissent's reasoning convincing, we must follow the precedent [established by an earlier decision]." ). Whether or not *Abela* is correct "is not our place to say" insofar as *Abela* conflicts with still earlier cases. *Darrah v. City of Oak Park*, 255 F.3d 301, 309-10 (6th Cir. 2001). Rather, we must apply the prior decision, because a later panel cannot overturn this court's precedent. With respect to the case at bar,

we hold *Simpson* and *Burroughs* control our analysis, and that the Michigan Supreme Court's order

denying Alexader relief from the judgment constitutes an explained order invoking an independent

and adequate procedural bar to relief.[5]

B. Cause and Prejudice

If a state prisoner has "defaulted his federal claims in state court pursuant to an independent

and adequate state procedural rule," *Coleman*, 501 U.S. at 750 (1991), federal habeas review is

barred unless the petitioner "can demonstrate cause for the default and actual prejudice as a result

of the alleged violation of federal law, or can demonstrate that failure to consider the claims will

result in a fundamental miscarriage of justice." *Coe v. Bell*, 161 F.3d 320, 329 (6th Cir. 1998).

Although Alexander contends he is innocent and that a miscarriage of justice will result absent

federal review, he does not come close to meeting his burden in demonstrating his conviction fits

---

[5]In a case decided after *Abela* involving nearly the same facts, the same result was reached without comment about the apparent conflict in our precedent. *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) ("Munson argues that the last explained state court judgment is the trial court's opinion denying his post-conviction motion for relief. In that opinion, the court relied on procedural default in rejecting only one of his claims; it denied the other claims on their merits. Contrary to Munson's assertion, however, the last explained state court judgment in this case is the Michigan Supreme Court's order denying review of Munson's claims based upon his failure to comply with Rule 6.508(D).").

within the quite narrow, latter set of cases.[6] We therefore proceed to address whether he has demonstrated cause and prejudice with respect to each of his claims.

The petitioner cites ineffectiveness of trial and appellate counsel as cause for defaulting these claims. "Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact entitled to de novo review." *Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir. 2000). Ineffectiveness is analyzed under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In undertaking this review of the record, this court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Next, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Under this court's precedent, a reasonable probability "does not mean a certainty, or even a preponderant likelihood of a different outcome . . . ." *Matthews v. Abramajtys*,

---

[6]The category of cases involving "fundamental miscarriage of justice" is a narrow exception, inapplicable here. *Schlup v. Delo*, 513 U.S. 298 (1995). A federal court may only grant habeas on a claim defaulted in state court when either "new reliable evidence . . . that was not presented at trial" indicates no reasonable juror would have convicted the petitioner or when the petitioner can show that a constitutional violation not previously raised "probably resulted in the conviction of one who is actually innocent." *Id.* at 324, 327. The only new evidence presented involves a critical witness's testimony, recanting his claim that Alexander had made incriminating comments to him during the original trial. Given that the district court explicitly held this testimony was unpersuasive, and there is no evidence suggesting this conclusion was in clear error, we hold that Alexander has not met his burden. Likewise, though he asserts his innocence in briefing, he does not present evidence indicating his conviction "probably resulted" in the conviction of someone who is actually innocent. Therefore he is not entitled to the avenue of relief set out in *Schlup*.

319 F.3d 780, 790 (6th Cir. 2003). But it must be "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The petitioner also defaulted his claims in his first appeal as a matter of right, including his ineffective assistance of trial counsel claim, so he must demonstrate cause and prejudice with respect to this failure as well. *Munson*, 384 F.3d at 315 n.2 (noting a claim of ineffective assistance of trial counsel may be brought on direct appeal in Michigan). Criminal defendants are entitled to effective appellate counsel in their first appeal as a matter of right. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). The inquiry, however, varies slightly from whether trial counsel is ineffective. In recognition of the fact that a defendant may be more likely to prevail on appeal by raising only his most compelling claims, the mere failure of appellate counsel to bring up every "non-frivolous" claim on behalf of a client does not render his assistance ineffective. *Jones v. Barnes*, 463 U.S. 745, 551-52 (1983). To prevail in showing cause, the petitioner would have to demonstrate that the issue not presented "was clearly stronger than the issues that counsel did present." *Smith v. Robbins*, 528 U.S. 259, 288-89 (2000); *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). Moreover, the petitioner must show there is "a reasonable probability, but for counsel's unreasonable failure . . . he would have prevailed on his appeal." *Smith*, 528 U.S. at 285.

1. Sixth Amendment Claim (Claim IV)

The petitioner contends that his counsel's failure to object to testimony by Antonio Postell, a fellow inmate who elicited incriminating comments from him in the absence of counsel, constitutes ineffective assistance of counsel. Postell met with detectives, in the midst of Alexander's trial, on June 26, 1998. And three days later on June 29, 2008, he met with prosecutors, and agreed to testify.

If Postell had an agreement with prosecutors to elicit, or if they encouraged him to elicit, the statements, admission of his testimony violated Alexander's Sixth Amendment right to counsel. At the petitioner's original trial, Postell said no such relationship existed. Postell later recanted this testimony in the federal habeas proceeding, professing that a quid pro quo did exist whereby he would elicit incriminating statements from Alexander. As the petitioner notes, "Postell's testimony at the hearing before this Court [the federal district court], if believed, clearly would establish an agency relationship and entitlement to relief." Br. Appellant at 29. However, the district court explicitly found Postell's testimony at the evidentiary hearing was not credible. To the extent Postell recanted the claims he made at Alexander's trial, the magistrate judge found Postell's testimony to be "illogical," "internally inconsistent," uncorroborated by other evidence, inspired by the risk of retribution, and less plausible than both a video taped statement made prior to Alexander's criminal trial and his testimony at that trial.

Following the evidentiary hearing, a magistrate judge made a number of factual findings, adopted by the district court, that are diametrically opposed to the conclusions the petitioner proposes we adopt in these proceedings. The most critical of these findings were that no agreement existed between Postell and the State and that no government employee asked, suggested, or even encouraged Postell to elicit incriminating statements from Alexander. The district court also found that Postell had never before been a "proactive informant" and had never before received a deal in return for information or his testimony. Rather, Postell "acted solely on his own initiative in communicating with Gregory Alexander at the Calhoun County Jail," and that the police and prosecutors had no way of knowing that Postell "could or would engage Alexander in uncounselled

communications relating to the murder of Tremain (sic) Watson." Communication between the two prisoners was not inevitable or foreseeable, as evidenced by the facts that Postell and Alexander were housed in separate cells on different levels of the Calhoun County Jail and that they communicated through the ventilation system. There is no good reason to find fault, let alone clear error, in the magistrate judge's findings, which were adopted by the district court. Given these factual findings, we proceed to consider whether Alexander's constitutional rights were violated by admission of Postell's testimony, and consequently, whether his counsel's assistance can be deemed ineffective in failing to object.

The Sixth Amendment provides that, "the accused shall enjoy the right . . . to have Assistance of Counsel for his defence." U.S. Const. amend VI. This right is triggered "'at or after the time that judicial proceedings have been initiated . . . whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Fellers v. United States*, 540 U.S. 519, 523 (2004) (quoting *Brewer v. Williams*, 430 U.S. 387, 398 (1977)). Once the Sixth Amendment has attached, the government may not "deliberately elicit" incriminating statements from the defendant without the presence of his attorney. *See United States v. Henry*, 447 U.S. 264, 270 (1980) (outlining the deliberate-elicitation standard). Unlike a defendant's Fifth Amendment rights, the Sixth Amendment is implicated even when an undercover officer or unidentified informant acting at the behest of the state questions the defendant. *Massiah v. United States*, 377 U.S. 201, 206 (1964). In other words, admission of statements made even when the defendant does not know he is being interrogated can violate the Sixth Amendment. *Ibid.*

The Supreme Court has cautioned, "the Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached." *Maine v. Moulton*, 474 U.S. 159, 176 (1985). Rather, the Constitution is implicated when the police suggest an informant record conversations and help an informant record conversations with the defendant. *Ibid.* A defendant's Sixth Amendment right is also likely to be violated when an informant has an arrangement already in place with the state at the time of the conversation, and perhaps is compensated on a contingent basis. *Henry*, 447 U.S. at 270. In perhaps its broadest characterization of the rights protected by the Sixth Amendment, the Supreme Court has stated that, "[b]y intentionally creating a situation likely to induce Henry to make incriminating statements without the assistance of counsel, the Government violated Henry's Sixth Amendment right to counsel." *Id.* at 274.

There is no dispute that Alexander's Sixth Amendment right to counsel had attached at the time of his statements to Postell. The issue before us is whether Alexander's counsel was ineffective for not arguing that admission of Postell's testimony in fact violated the Sixth Amendment even though he was not acting as an agent of state. Because *Massiah* and Sixth Circuit precedent simply do not give rise to a doctrine of implied state agency or allow for a finding that state agency existed as a matter of law under these circumstances, we hold counsel was not ineffective in failing to raise this claim. It is simply not clear under these circumstances that Alexander's constitutional rights were violated. Few decisions recognize a doctrine of implied state agency, absent express encouragement or agreement by the police, and what law does exist suggests it would not apply under the circumstances presented in this case.

The petitioner relies upon a Ninth Circuit case, *Randolph v. California*, 380 F.3d 1133 (9th Cir. 2004), in contending his counsel was ineffective in not raising the Sixth Amendment issue at trial and on appeal. *Randolph* does suggest state agency may be implied by the totality of the circumstances. But this case was decided six years after Alexander's original trial and it reflects an extension, not an application, of *Massiah*. Our jurisprudence would not necessarily follow the Ninth Circuit. The Supreme Court has never held that an informant was acting on behalf of the state resulting in a *Massiah* violation merely because detectives or prosecutors "should have known" a particular informant "believed that he would receive leniency if he elicited incriminating statements" from the defendant. *Id.* at 1147. In reaching this conclusion, the Ninth Circuit creates an affirmative duty on the part of detectives or prosecutors to ensure informants understand whether or not they will receive a deal in exchange for eliciting statements. Even if such a rule is justified, it would be inapplicable here, where the informant has never before testified pursuant to a deal with prosecutors and did not share a cell with the petitioner such that conversation could be reasonably anticipated between the two parties. That communication between Postell and Alexander took place through the ventilation system bolsters the notion their communication was unforeseeable.

Failure of his trial and appellate counsel to present a novel legal argument when the caselaw is ambiguous does not constitute ineffective assistance. The Supreme Court has held, "the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Engle v. Isaac*, 456 U.S. 107, 134 (1982). Perhaps Alexander's Sixth Amendment claim is stronger than other claims raised in his first appeal as a matter of right, but failing to raise a claim that does not

follow logically or entail an inevitable extension of preexisting Sixth Amendment jurisprudence does not render his appellate or trial counsel ineffective. The petitioner can cite no cases at the time of his original trial recognizing the doctrine he now says his counsel had a duty to raise. Even if the doctrine had been accepted by the court, its application to the facts at bar would remain highly questionable. These facts demonstrate that the petitioner cannot come close to satisfying the constitutional standard of ineffectiveness. Consequently, we must let the state's denial of habeas with respect to this claim stand.

2. Juror Dismissal (Claim V)

The petitioner's next claim is that the dismissal of the only black juror for cause, in the midst of the criminal proceedings, violated his rights. Because defense counsel did not object to the dismissal of the juror and his appellate counsel also did not raise this issue, the petitioner must show cause and prejudice for this failure before this court may address the merit of the claim. He can do neither.

There were several reasons for the court to dismiss the juror in question and for defense counsel not to object. The juror apparently told bailiff that he was afraid that if he remained on the jury, he would lose his job. He also told the bailiff that he was not feeling well. JA 337a. The judge noted that the juror had been observed, on several occasions, "to be sitting with his eyes closed," and he believed there was reason to question whether he had been "paying attention" to the proceedings. The prosecutor also claimed the juror in question had been heard "letting out moans and groans" at several points in the proceedings, and appeared to be in pain. When interviewed by the judge (in the presence of both attorneys), the juror claimed he had been released from the hospital

nine days earlier due to heart trouble. This juror contradicted himself about his health and whether he had formed in opinion in the case. At first he said he felt fine, then he insisted, "I feel real bad like I am now." Likewise, the dismissed juror insisted he had not formed any conclusion as to the defendant's innocence or guilt. However, later in the discussion, he told the judge that he had formed a preconceived belief regarding the defendant's guilt or innocence, but he did not indicate whether this belief was in favor of or against the defendant. He also seemed to be paranoid, apparently believing that two men who approached him in the jury assembly room to ask the time were possibly a threat to his well-being or a member of his family. In the presence of both counsel, the juror "expressed . . . fearful feelings about or associated with his services," telling one counsel, "he did not want to die."

The petitioner in this case has not sufficiently explained why defense counsel's failure to object to the dismissal of this juror, or appellate counsel's failure to raise this issue on appeal, constitutes ineffective assistance. There were many reasons for the defense to want this juror dismissed, including evidence that he was not paying attention, that he was paranoid, and perhaps most importantly, that he did not want to serve on the jury. Even if objecting would have kept the only black juror on the jury, competent counsel might fear that such a juror would irrationally vote to convict irrespective of the evidence or that he might believe the defendant was behind the two men who he believed threatened him. In light of the record, the petitioner cannot demonstrate that the failure to object to the dismissal of the only black juror, absent any evidence that the juror's race was the basis of the dismissal or that the dismissal would adversely impact his client, amounts to ineffective assistance. Thus, the petitioner has not demonstrated cause for the failure to raise this

claim in earlier proceedings, or that there is a reasonable probability the outcome of his trial or appeal would have differed had this claim been raised.

3. Juror Familiarity with a Prosecution Witness (Claim VI)

This claim alleges that the failure to request a hearing regarding a juror's relationship with a witness and her potential bias amounts to ineffective assistance of counsel. Prior to Postell's testimony, one of the jurors informed the trial court she thought she knew Postell. Because Postell was not identified as a witness at the outset of the trial, his name was not read to the jury. The juror indicated that she could weigh his testimony by the same standards as any other witness and said she was not well acquainted with Postell and had not seen him for "a long time." Neither the prosecutor or defense counsel asked the juror any questions, and the juror was permitted to remain on the jury and no further hearing was held.

Under these circumstances, a court is not obligated to hold such a hearing and the defendant's rights were not violated. "This court has specifically held that not all communications with jurors warrant a hearing for a determination of potential bias," especially when the defense counsel, as here, does not request such a hearing, the contact occurred prior to the trial, and the communication did not concern any of the issues pending before the jury. *White v. Smith*, 984 F.2d 163, 166 (6th Cir. 1993). Indeed, hearings are only required when there is an allegation of contact or unauthorized communication that "presents a likelihood of affecting the verdict." *United States v. Frost*, 125 F.3d 346, 377 (6th Cir. 1997). When contact between a juror and a prospective witness was "extremely limited [in] nature," there is no such need for such a proceeding and no presumption of prejudice. *United States v. Walton*, 908 F.2d 1289, 1297 (6th Cir.), *cert. denied*, 498 U.S. 990 (1990); *United*

*States v. Herndon*, 156 F.3d 629, 635 (6th Cir. 1998). To demonstrate a juror's prior contact with a witness violated defendant's constitutional rights, the petitioner would have had to show the relationship gave rise to an "extraneous influence . . . [that] taints the deliberations with information not subject to a trial's procedural safeguards." *Herndon*, 156 F.3d at 636 (holding that a district court abused its discretion in denying a party's request for a hearing when juror and party had prior business dealings).

Because there is no evidence in the record or juror's own testimony to suggest an "extraneous influence" existed, counsel's failure to raise it at trial does not amount to ineffective assistance. And even if the claim were not frivolous such that the petitioner had demonstrated cause for the default, there is no evidence whatsoever establishing prejudice from the court's failure to investigate the juror's partiality. Finally, the petitioner has also failed to establish cause and prejudice for the default at the state appellate level, because this claim is not "clearly stronger" to those raised on appeal.

4. Failure to Produce a Res Gestae Witness (Claim VII)

The petitioner's next habeas claim alleges that his counsel was ineffective in failing to produce Gino Fambro as a witness, denying him due process and a fair trial. The petitioner contends Fambro could have testified that he saw other men shoot the victim. There is nothing in the record to suggest why Fambro was not called. Like the petitioner's other claims, this was procedurally defaulted on direct review. Other witnesses testified that six people shot at the victim, which suggests Fambro's testimony could be reconciled with the petitioner's guilt. Since the petitioner does not even suggest Fambro would have testified that Alexander did not shoot the victim, there

is no reason to conclude Fambro's testimony was exculpatory, let alone that it would have resulted in a different jury verdict. Therefore the petitioner has failed to demonstrate that counsel was ineffective in failing to produce the witness or that he suffered prejudice assuming this fell below objectively reasonable conduct. Absent this showing, we cannot evaluate this defaulted claim.

5. Use of Allegedly Perjured Testimony (Claim VIII)

Next, the petitioner contends that the prosecutor used false testimony of Jeffrey Ragland and Antonio Postell in securing the petitioner's conviction. To prevail, the petitioner "must show that the statements were material, that they were actually false, and that the prosecution knew they were false." *United States v. Hawkins*, 969 F.2d 169, 175 (6th Cir. 1992). The fact that two other witnesses' testimony differed from Ragland's and Postell's testimony does not necessarily indicate their testimony was perjured. Not only has the petitioner failed to show the testimony in question was false, he has failed to show that prosecution had any reason to believe it was false or that the prosecution knew the statements were false. *See Foley v. Parker*, 488 F.3d 377, 391-92 (6th Cir. 2007). In fact, the petitioner's argument disregards evidence suggesting this testimony was true: as the magistrate judge observed, "Postell's testimony corroborated Ragland's testimony, and Postell claimed that his only source of information was Petitioner." Since this finding was not in clear error, defense counsel's failure to object to the claim at the petitioner's original trial does not constitute ineffective assistance of counsel and review of this claim is barred.

6. Waiver of Right to Testify (Claim XI)

The petitioner's next habeas claim involves the trial court's failure to obtain an on-the-record waiver that Alexander's decision not to testify was made freely, knowingly, and intelligently.

Appellate counsel's failure to raise this claim was not ineffective, because the law does not require such a record. The Sixth Circuit has stated explicitly, trial courts are not "required to *sua sponte* address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify." *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000). In reaching this conclusion, this court further held that trial courts need not document the defendant's waiver on the record. *Ibid.* Since failure to raise a frivolous claim is not objectively unreasonable and cannot establish prejudice, the petitioner has failed to demonstrate he is entitled to review of this claim.

7. Cumulative Effect (Claim XII)

The petitioner argues that the cumulative effect of the errors committed in the course of the petitioner's trial deprived him of a fair trial. Like his other claims, this claim is procedurally defaulted. Although Supreme Court precedent has not acknowledged a distinct right to cumulate errors, the Sixth Circuit has recognized that even when no one error "may in itself be reversible, the totality of the error" can deny a defendant his right to due process. *See Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir.) (noting that the Supreme Court has never held that distinct constitutional claims can be cumulated), *opinion corrected on denial of reh'g*, 307 F.3d 459 (2002); *United States v. May*, 69 F.3d 116, 123 (6th Cir. 1995). Many of his claims appear to be novel, frivolous, or unpersuasive. Cumulating them therefore does not alter the analysis. Even assuming this argument is "clearly stronger" than those arguments appellate counsel did present on direct review, this claim fails since the petitioner has not demonstrated a "reasonable probability" of success in his appeal even had these claims been presented. At the very least, they are novel and not the kind of slam-dunk arguments that would establish a reasonable probability of success.

8. Ineffective Assistance of Trial Counsel (Claim IX)

In addition to being ineffective for failing to raise the constitutional objections already discussed above, the petitioner claims that trial counsel's performance was deficient because counsel: (1) failed to seek a continuance when prosecutor moved to endorse Postell as a witness; (2) failed to verify and produce work records for the petitioner's alibi witness; (3) failed to object to prosecutor's improper remarks during voir dire and closing arguments; (4) made concessions in his opening statement that reduced the burden of proof; (5) made inflammatory statements during voir dire; (6) failed to object to reasonable doubt instruction and failed to request a cautionary instruction on use of an informant; and (7) failed to object to certain evidentiary errors. The only theory of ineffectiveness raised on direct review is not before us, so this claim is procedurally defaulted except insofar as the petitioner can demonstrate cause and prejudice.

The petitioner cites ineffectiveness of his appellate counsel as cause, but he does not elaborate on many of these claims and has failed to meet his burden in showing a "reasonable probability" that the result of his appeal would have been different had he presented this ineffective claim. *Smith*, 528 U.S. at 285. There is no indication that work records for an alibi witness were so critical or exculpatory that had counsel obtained and introduced them it would likely have affected the verdict, especially in light of testimony putting the petitioner at the scene of the crime. Likewise, there is no reason to believe that, even had trial counsel received a continuance, Postell's testimony would have been excluded. After all, the evidence strongly indicates he was not acting on behalf of the police or detectives, and admission of his testimony did not violate the petitioner's Sixth Amendment rights. Finally, the failure to object to improper statements during voir dire and closing

arguments or to make certain evidentiary objections—notwithstanding reason to doubt the merit of these claims—does not on its own establish a reasonable probability of a different outcome on an ineffective assistance claim. None of the omissions alleged by the petitioner would establish a reasonable probability of a different outcome on appeal, and therefore cannot excuse the default.

III

For the foregoing reasons, the district court order dismissing Alexander's petition is AFFIRMED.