RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0318P (6th Cir.)
File Name: 04a0318p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

MAURICE MUNSON,
*Petitioner-Appellant,*

*v.*

No. 03-1563

ROBERT J. KAPTURE, Warden,
*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-71956—Avern Cohn, District Judge.

Argued: August 12, 2004

Decided and Filed: September 20, 2004

Before: KEITH, MARTIN, and ROGERS, Circuit Judges.

———————

**COUNSEL**

**ARGUED:** James Sterling Lawrence, Detroit, Michigan, for Appellant. Debra M. Gagliardi, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** James Sterling Lawrence, Detroit, Michigan, for Appellant. Laura Graves Moody, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

———————

**OPINION**

———————

BOYCE F. MARTIN, JR., Circuit Judge. Maurice Munson, a Michigan prisoner, appeals the district court's denial of his petition for a writ of habeas corpus. For the reasons that follow, we AFFIRM.

**I.**

A jury convicted Munson of two counts of armed robbery in violation of M.C.L. § 750.529 and two counts of assault with intent to commit criminal sexual conduct (penetration) in violation of M.C.L. § 750.502(G)(1). The events giving rise to Munson's prosecution transpired at Juanita's House of Beauty in Detroit, Michigan, on late Friday, June 18, or early June 19, 1993, as Sherrease Carter, age thirty, an employee of the beauty shop, and her sixteen-year-old niece, Shamika Kincaid, were leaving the shop. The evidence adduced at trial indicates that as Carter and Kincaid were leaving the shop, Munson appeared and forced them back inside at knifepoint. He ordered them to undress, which they did, and he proceeded to take various items from the shop (including money, hair clippers and jewelry), as well as items from Carter and Kincaid (including clothing and sandals that they had just purchased and jewelry).

Munson then took Carter into a back room and threatened Kincaid that she would be next. In the back room, Munson sat down on a chair and forced Carter onto his lap. Munson put the knife down momentarily as he attempted to insert his penis into Carter's vagina, at which point Carter grabbed the knife and stabbed him multiple times. Carter and Kincaid, still naked, immediately ran out of the shop. They observed Munson leave the shop with packages containing their newly-purchased sandals and clothing, among other things. Carter and Kincaid were soon picked up by a motorist who took

them to the police station. When the victims later returned to the shop, they discovered a pager that Munson had apparently dropped during the incident.

The police located Munson by tracing the pager, which was registered to one "Moe Rone Monson." After discovering that there was an individual named Maurice Munson in the Detroit area with a criminal record, police went to his residence, which was his aunt's apartment. Munson's former girlfriend, Keysha Monique Tate, was at the apartment at the time and permitted the police to enter after they repeatedly knocked on the door. Munson was arrested in the apartment, at which time the police seized, without a warrant, various incriminating items, including cash, gauze bandages, hair clippers, sandals, new clothing items and jewelry.

Tate gave a statement to police, which she confirmed and elaborated upon at trial, indicating that Munson had bandages on his chest when she arrived at the apartment Saturday morning. Tate also stated that on the morning of his arrest, Munson gave her a pair of sandals, various clothing items, cash and a ring. Carter and Kincaid also positively identified Munson as the perpetrator at separate lineups and at trial. Among the pieces of physical evidence admitted at trial were the pager and the items seized in the apartment upon Munson's arrest, which apparently were the same items stolen from the victims and the beauty shop.

Munson did not testify at trial. He asserted an insanity defense, with all expert witnesses agreeing that he was mentally ill but disagreeing as to whether he was criminally responsible for his actions. The jury found Munson mentally ill but guilty of robbery and assault. He was sentenced to prison for a term of twenty-five to sixty years.

Munson filed a direct appeal to the Michigan Court of Appeals, raising only one issue: that his sentence was disproportionately high. The Michigan Court of Appeals

affirmed the conviction and sentence, and the Michigan Supreme Court denied leave to appeal.

Munson then filed in the state trial court a post-conviction motion for relief from judgment, in which he raised five new claims: (1) the warrantless arrest, search and seizure deprived him of due process; (2) he was denied a fair and impartial trial because of prosecutorial misconduct; (3) his trial counsel rendered ineffective assistance; (4) the cumulative effect of the trial errors deprived him of a fair trial; and (5) his appellate counsel rendered ineffective assistance.

The state trial court denied Munson's motion in a written order that rejected each of his new claims. With respect to the prosecutorial misconduct claim, the court held that "[t]he defendant fails to show just cause why prosecutor misconduct was not raised in earlier appeals. Further, the conduct complained of did not deny defendant a fair trial." The district court found the remaining claims to be without merit for reasons other than Munson's failure to raise them earlier.

The Michigan Court of Appeals denied leave to appeal in an order that states as follows:

The Court orders that the application for leave to appeal is DENIED because defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).

The Court further orders that the motion to remand is DENIED because defendant has failed to show that development of a factual record is required for appellate consideration of the issues. MCR 7.211(C)(1)(a)(ii).

The Michigan Supreme Court also denied leave to appeal for the same reason, in an order stating:

On order of the Court, the delayed application for leave to appeal from the May 24, 2000 decision of the

Court of Appeals is considered, and it is DENIED, because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).

Munson next sought relief in federal court, by filing the instant petition for a writ of habeas corpus. The petition asserted essentially the same claims that were presented in his motion for post-conviction relief: (1) the warrantless arrest and search and seizure denied him due process; (2) the prosecutor engaged in misconduct; (3) he was denied the effective assistance of trial counsel; (4) cumulative error rendered the trial unfair; and (5) he was denied the effective assistance of appellate counsel. The district court held that each claim was procedurally defaulted, but proceeded to analyze whether ineffective assistance of trial or appellate counsel constituted "cause" to excuse the procedural default. Concluding that neither trial counsel nor appellate counsel rendered ineffective assistance, the district court denied the petition; it granted a certificate of appealability, however, on the issues of whether Munson's claims were each procedurally defaulted and whether he was denied the effective assistance of trial or appellate counsel. This appeal followed.

## II.

We review de novo the district court's denial of a petition for a writ of habeas corpus. *Clinkscale v. Carter*, No. 02-4219, 2004 WL 1516670, at *3 (6th Cir. July 8, 2004). As noted, the district court held that each of Munson's habeas claims was barred by the doctrine of procedural default. "Under the procedural default doctrine, [a] federal court is generally barred from considering an issue of federal law arising from the judgment of a state court if the state judgment rests on a state-law ground that is both independent of the merits of the federal claim and an adequate basis for the [state] court's decision." *Id.* at *7 (citation and internal quotation marks omitted). We have articulated a four-part

test to be used in determining whether a habeas claim has been procedurally defaulted:

First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule . . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction . . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim . . . . Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Id.* at *7-*8 (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

For purposes of procedural default, the "state judgment" with which we are concerned is "the last *explained* state court judgment." *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). Munson argues that the last explained state court judgment is the trial court's opinion denying his post-conviction motion for relief. In that opinion, the court relied on procedural default in rejecting only one of his claims; it denied the other claims on their merits. Contrary to Munson's assertion, however, the last explained state court judgment in this case is the Michigan Supreme Court's order denying review of Munson's claims based upon his failure to comply with Rule 6.508(D).[1] We have held that orders such as that issued by

---

[1] Rule 6.508(D), which governs post-conviction relief, provides as follows:

the Michigan Supreme Court constitute "explained" state court judgments for purposes of procedural default. *See, e.g., Simpson v. Jones*, 238 F.3d 399, 407-08 (6th Cir. 2000) (holding that an order issued by the Michigan Supreme Court stating that the petitioner had "failed to 'meet the burden of establishing entitlement to relief under MCR 6.508(D)'" – though "brief" – constituted the last explained state court judgment in the case).

The district court held that Munson's habeas claims were procedurally defaulted because Rule 6.508(D) constituted an adequate and independent state ground on which the Michigan Supreme Court relied in foreclosing review of the claims. We agree.[2] It is well-established in this circuit that

---

**Entitlement to Relief.**    The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion

(1) seeks relief from a judgment of conviction and sentence that is still subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300;

(2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this chapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

    (a)  good cause for failure to raise such grounds on appeal or in the prior motion, and

    (b)  actual prejudice from the alleged irregularities that support the claim for relief . . . .

[2]Our agreement is subject to one qualification, however. It is possible that the Michigan Supreme Court may not have been able to rely upon Rule 6.508(D) to deny relief with respect to Munson's ineffective

---

the procedural bar set forth in Rule 6.508(D) constitutes an adequate and independent ground on which the Michigan Supreme Court may rely in foreclosing review of federal claims. *See, e.g., Simpson*, 238 F.3d at 407-08 (holding that the Michigan Supreme Court's statement that the petitioner had "failed to 'meet the burden of establishing entitlement to relief under MCR 6.508(D)'" was an adequate and independent state procedural rule that "prevents federal review"); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002) (holding that "the Michigan Court of Appeals and Michigan Supreme Court's statements that Burroughs was not entitled to relief under M.C.R. 6.508(D) presents a sufficient explanation that their rulings were based on procedural default").

Munson argues that *Simpson* and *Burroughs* were wrongly decided in light of the Michigan Supreme Court's decision in *People v. Jackson*, 633 N.W.2d 825 (Mich. 2001). He maintains that *Jackson* establishes that Rule 6.508(D) is not firmly established or regularly followed and, therefore, cannot constitute an adequate and independent state ground for purposes of procedural default. Notwithstanding the fact that our analysis of procedural default is governed by our own precedent, not that of the Michigan Supreme Court, *Jackson*

---

assistance of appellate counsel claim. Subsections (1) and (2) of Rule 6.508(D) are inapplicable to Munson's appeal. Subsection (3) bars collateral review on grounds that could have been raised on direct appeal, but were not, absent a showing of cause and prejudice. Munson's ineffective assistance of appellate counsel claim arguably could not have been raised on direct appeal because the appellate attorney would be arguing that he or she was currently providing ineffective assistance of counsel. If the Michigan Supreme Court could not have been relying upon procedural default to dispose of Munson's ineffective assistance of appellate counsel claim, the district court would not be able to find this claim to have been procedurally defaulted. However, the outcome of Munson's appeal is unaffected. As discussed below, the application of *Strickland v. Washington*, 466 U.S. 668 (1984), demonstrates that even if Munson did, in fact, receive ineffective assistance of appellate counsel, the result of his appeal would have been no different.

does not stand for the proposition advanced by Munson. The portion of *Jackson* on which he relies merely explains and interprets this Court's decision in *Rogers v. Howes*, 144 F.3d 990 (6th Cir. 1998), in which we held that Rule 6.508(D) was not regularly applied at the time of the defendant's conviction, given that the rule had not, in fact, been enacted yet. The *Jackson* court upheld the retroactive application of Rule 6.508(D) to the defendant in that case, holding that our decision in *Rogers*, which involved only federal court procedural default principles, did not restrict the Michigan courts' ability to apply the rule.

Having determined that Munson's habeas claims have been procedurally defaulted, we must next consider whether he has established the requisite "cause" and "prejudice" to permit our consideration of the merits of his claims. *See Simpson*, 238 F.3d at 407 (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Munson argues that the cause for his procedural default was the constitutionally ineffective assistance rendered by his trial and appellate counsel; he argues that his trial counsel was ineffective for failing to challenge the admissibility of the physical evidence seized in the apartment and that his appellate counsel was ineffective for failing to raise on direct appeal the issue of trial counsel's ineffectiveness. In general, constitutionally ineffective assistance of counsel can constitute cause for procedural default. *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994). In this case, however, Munson's counsel rendered no such ineffective assistance.

Munson's ineffective assistance claims are governed by the familiar standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires him to prove both that his counsel's representation "fell below an objective standard of reasonableness," *id.* at 688, and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. The district court found that even if Munson satisfied the first prong of *Strickland*, he failed to satisfy the second.

We agree. Even if the physical evidence seized in the apartment had been suppressed, there was abundant additional evidence adduced at trial indicating Munson's guilt. For example, both victims positively identified Munson as the perpetrator at trial and in separate lineups, Munson's former girlfriend testified about Munson's injuries and his gifts to her shortly after the crime was committed, and the pager left at the scene of the crime was traced to Munson. In light of this evidence, Munson cannot prove that there is a reasonable probability that but for his counsels' alleged errors, the outcome of his trial or appeal would have been different. Therefore, the district court correctly held that Munson's claims of ineffective assistance of trial and appellate counsel lack merit and that Munson cannot rely upon either type of alleged ineffectiveness as cause to excuse the procedural default of his habeas claims.

AFFIRMED.