RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0003p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

BRUCE GUILMETTE,

*Petitioner-Appellee,*

*v.*

No. 08-2256

CAROL R. HOWES, Warden,

*Respondent-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-72646—Victoria A. Roberts, District Judge.

Argued: October 16, 2009

Decided and Filed: January 12, 2010

Before: MARTIN, ROGERS, and COOK, Circuit Judges.

—————————————

## COUNSEL

**ARGUED:** Janet A. Van Cleve, MICHIGAN ATTORNEY GENERAL'S OFFICE, Lansing, Michigan, for Appellant. Kimberly Thomas, UNIVERSITY OF MICHIGAN, MICHIGAN CLINICAL LAW PROGRAM, Ann Arbor, Michigan, for Appellee. **ON BRIEF:** William C. Campbell, ASSISTANT ATTORNEY GENERAL, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Kimberly Thomas, UNIVERSITY OF MICHIGAN, MICHIGAN CLINICAL LAW PROGRAM, Ann Arbor, Michigan, for Appellee.

ROGERS, J., delivered the opinion of the court, in which COOK, J., joined. MARTIN, J. (pp. 10-17), delivered a separate dissenting opinion.

—————————————

## OPINION

—————————————

ROGERS, Circuit Judge. A Michigan jury convicted petitioner Bruce Guilmette of first-degree home invasion. In a petition for a writ of habeas corpus, Guilmette alleges that his trial attorneys provided constitutionally ineffective assistance. The district court found

1

that this claim was not procedurally defaulted and that petitioner's counsel were ineffective, and the district court therefore granted petitioner a conditional writ. Because our precedents dictate that petitioner procedurally defaulted his ineffective assistance of counsel claim, and because petitioner has not established cause and prejudice for that default, habeas relief was not warranted in this case.

At approximately noon on January 7, 1999, Joan McCormick was alone in her home in Howell, Michigan. A man walked past her window, approached her front door, and then repeatedly rang the doorbell. McCormick did not answer the door. The man went out past a van he had parked in McCormick's driveway, and she lost sight of him for a few minutes. He then returned to the front door, and, after again repeatedly ringing the doorbell, began banging on the door. After what McCormick described as "a lot" of such banging, she saw her doorknob move, and then the locked door came "crashing open." McCormick screamed and attempted to run away from the door. She tripped and fell, and when she then glanced back at the door, the man had disappeared from the doorway. From her window, McCormick saw the man circle the van from the passenger side to the driver side, enter the van, and drive away. McCormick identified the van as a gray Chevy Astro with a red pinstripe.

Just after she fell, McCormick called 911 and described both the man and his vehicle to the operator. Trooper Jennifer Coulter responded to the call, and when she arrived at McCormick's residence, Coulter noticed footprints in the snow leading up to the front door. After interviewing McCormick, Coulter photographed the best footprint she could find. Later that day, McCormick independently photographed a footprint in the snow on the threshold of her doorway. McCormick identified the petitioner, Bruce Guilmette, out of two photographic lineups during the next few weeks.

Guilmette was charged with home invasion. At the preliminary hearing on February 24, 1999, McCormick stated that Guilmette resembled the man she had seen at her door but said that Guilmette's brother, who was present at the hearing, bore a similar resemblance. She also described the man at her door as having hair that protruded from underneath his hat, probably by one or two inches.

At Guilmette's trial for first-degree home invasion, McCormick testified to the events of January 7 and stated that the man at her door "look[ed] a lot like" Guilmette. She also testified that the man she identified in the lineups—Guilmette—was the man at her house. A police officer testified that McCormick had identified a picture of Guilmette's vehicle, a gray Astro with a red pinstripe, as the vehicle in which the man had driven away. The prosecution additionally introduced into evidence both Trooper Coulter's photograph of the footprint leading up to the house and McCormick's photograph of the footprint on the threshold of her home.

The defense maintained that Guilmette had been mistakenly identified, relying primarily on three arguments. First, the defense presented evidence that the driver-side door on Guilmette's van was inoperable, such that Guilmette could not have entered the van in the way that McCormick described. Second, the defense offered testimony and photographic evidence that, at least as of Christmas, 1998, Guilmette had short hair. They argued that this contradicted McCormick's testimony from the preliminary hearing that the man at her door had longer hair. Finally, the defense offered a time-stamped receipt from a methadone clinic that indicated that Guilmette was at that clinic, which was approximately fifty miles from McCormick's home, at 12:38 p.m. on the day of the alleged home invasion.

In rebuttal, the state presented evidence that Guilmette had previously pled guilty to a home invasion and larceny with a similar *modus operandi* and in connection with which Guilmette had been driving a similarly described van. The court instructed the jury to consider this testimony only for identification or as evidence of a scheme and pattern. The prosecution also elicited testimony that the clock in the computer that generated the methadone clinic receipts was often inaccurate and that nineteen days after the incident, the clock was running eighteen minutes slow. The prosecution finally offered testimony of a detective who had driven from McCormick's home to the methadone clinic in forty-five minutes, driving eighty to eighty-five miles per hour on the freeway and despite a six minute delay for road construction.

The jury convicted Guilmette of first-degree home invasion, and Guilmette was unsuccessful in his direct appeal. On state collateral review, Guilmette argued for the first time that his trial counsel were ineffective for failing to discover that the photographs of the

two footprints admitted at trial apparently did not match. He argued that this constitutionally ineffective representation was prejudicial because the footprint from the door's threshold was the only proof of entry, a required element of first-degree home invasion. *See* Mich. Comp. Laws § 750.110a(2). The state trial court on collateral review denied this claim on the merits, finding that focusing on identification—rather than on whether there was entry—was a matter of trial strategy. Both the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal, issuing identical orders citing Guilmette's "failure to meet the burden of establishing entitlement to relief under [Mich. Ct. R. 6.508(D)]."

Guilmette then filed a habeas petition seeking relief for the same alleged violation. The district court granted a conditional habeas writ, finding that Guilmette's trial counsel were constitutionally ineffective because they failed to investigate the differences between the two photographs. The warden now appeals, arguing that this ineffective assistance claim was procedurally defaulted and that Guilmette has failed to establish cause and prejudice for that default.

Guilmette's ineffective assistance of counsel claim is procedurally defaulted because, although the state trial court on collateral review addressed the merits of Guilmette's claim, both the state appellate and supreme courts denied the claim pursuant to Mich. Ct. R. 6.508(D). "When a habeas petitioner fails to obtain consideration of a claim by a state court . . . due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (internal quotation marks omitted). Guilmette did not raise his ineffective assistance of trial counsel claim on direct appeal, as required by Mich. Ct. R. 6.508(D)(3). Our decision in *Munson v. Kapture*, 384 F.3d 310 (6th Cir. 2004), requires the conclusion that the Michigan courts enforced Rule 6.508(D)(3) in this case and thus that Guilmette's claim is procedurally defaulted. In *Munson*, as in the present case, the petitioner did not raise certain claims on direct appeal. 384 F.3d at 312-13. In both cases, the petitioner then raised the claims in a state trial court on collateral review, and the state trial court denied the claims on the merits.[1]

---

[1] The trial court dismissed one of Munson's claims as procedurally defaulted, but the court denied the remainder of the claims, including a claim that Munson's "trial counsel rendered ineffective assistance," on the merits. *Munson*, 384 F.3d at 313.

*Id.* at 313.  Then in both cases, the state appellate and state supreme courts each denied leave to appeal in brief orders, stating that the petitioner had "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *Id.*  In *Munson*, we held that Rule 6.508(D) constituted an adequate and independent state ground and thus held the claims to be procedurally barred.  *Id.* at 315.  No relevant fact distinguishes *Munson* from the present case, and thus Guilmette's claim is similarly procedurally defaulted.

This result is consistent with *Abela v. Martin*, 380 F.3d 915 (6th Cir. 2004).  In that case, both the Michigan trial court and the Michigan Court of Appeals denied the petitioner's collateral claims on the merits before the Michigan Supreme Court denied review pursuant to Mich. Ct. R. 6.508(D).  *Id.* at 920.  In part because the lower state courts had "repeatedly ruled on the merits," we concluded in *Abela* that the invocation of Mich. Ct. R. 6.508(D) by only the Michigan Supreme Court did not sufficiently indicate that the court was invoking a procedural bar, and thus that the claim was not procedurally defaulted.  *Id.* at 923-24.  In the present case, however, both the state appellate and state supreme court denied leave to appeal pursuant to Rule 6.508(D); this case is thus squarely controlled by our decision in *Munson*.[2]

This conclusion is supported by five of this court's other cases, three of which post-date *Abela*, and all of which hold that habeas claims were procedurally defaulted in situations materially indistinguishable from the present case.  *See Alexander v. Smith*, 311 F. App'x 875 (6th Cir. 2009) (post-*Abela*); *Spencer v. Booker*, 254 F. App'x 520 (6th Cir. 2007) (post-*Abela*); *McCray v. Metrish*, 232 F. App'x 469 (6th Cir. 2007) (post-*Abela*); *Burroughs v. Makowski*, 282 F.3d 410 (6th Cir. 2002) (pre-*Abela*); *Luberda v. Trippett*, 211 F.3d 1004 (6th Cir. 2000) (pre-*Abela*).  In each, the state trial court on collateral review denied the petitioner's claims on the merits, and then both the state appellate and state supreme courts denied the claims pursuant to Mich. Ct. R.

---

[2]The warden suggests that the ground relied upon by the state appellate court is irrelevant because the state supreme court order is an explained order and because federal courts should only examine lower court opinions when state supreme court orders are not explained. *Cf. Simpson v. Jones*, 238 F.3d 399, 407-08 (6th Cir. 2000).  The warden thus argues that Guilmette's claim would be procedurally defaulted even if the state appellate court had considered the merits of Guilmette's claim of ineffective assistance of counsel. *Cf. Alexander v. Smith*, 311 F. App'x 875, 883 (6th Cir. 2009).  We decline to resolve this issue because its resolution is not necessary to decide the present case.

6.508(D). *See Alexander*, 311 F. App'x at 879; *Spencer*, 254 F. App'x at 521-22; *McCray*, 232 F. App'x at 477; *Burroughs*, 282 F.3d at 412; *Luberda*, 211 F.3d at 1006. We held that the petitioner's claims were procedurally defaulted in each case. *Alexander*, 311 F. App'x at 884; *Spencer*, 254 F. App'x at 524-25; *McCray*, 232 F. App'x at 478; *Burroughs*, 282 F.3d at 414; *Luberda*, 211 F.3d at 1008. The binding nature of these precedents—procedurally closer than *Abela* to the instant case, and contained in published opinions issued both before *Abela* (*Burroughs* and *Luberda*) and after *Abela* (*Munson*)—is inescapable.[3]

Because Guilmette's ineffective assistance of counsel claim is procedurally defaulted, he must show cause and prejudice to excuse that default. *Munson*, 384 F.3d at 315. He cannot do so because his trial counsel were not constitutionally ineffective and because any error by those counsel did not prejudice him. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Guilmette argues correctly that ineffective assistance of appellate counsel can constitute cause to overcome a procedural default. *Howard v. Bouchard*, 405 F.3d 459, 478 (6th Cir. 2005). Where ineffective assistance of appellate counsel is presented as a possible cause to excuse the default of a claim of ineffective assistance of trial counsel, a court in some circumstances "must examine the merits of [the petitioner's] ineffective-assistance-of-trial-counsel claim." *Ivory v. Jackson*, 509 F.3d 284, 294 (6th Cir. 2007). Guilmette argues that his trial counsel were ineffective for failing to notice that the two footprint photographs introduced by the prosecution at trial—one taken by Trooper Coulter and the other taken by McCormick on the threshold of her door—apparently did not match. He argues that had his counsel noticed this discrepancy, they could have argued that the footprint on the threshold was

---

[3]We respect the reasoning of the court in *Abela*, and the forceful restatement of that reasoning by our dissenting colleague in this case. On a clean slate we might well apply such reasoning here. We are not in a position to do so, however, because of the compelling nature of binding precedent. We cannot escape such compulsion by ignoring cases or disregarding the stated facts of such cases. *Luberda*, a published opinion of this court preceding *Abela*, clearly states that the state trial court in Luberda's case did not rely upon Mich. Ct. R. 6.508(D). *Luberda*, 211 F.3d at 1006. In *Munson*, a published opinion of this court decided after *Abela*, four out of five of the claims—including claims specifically raised on the federal appeal—had been denied by the state trial court "for reasons other than Munson's failure to raise them earlier." *Munson*, 384 F.3d at 313.

not Guilmette's, and thus that the state had failed to establish entry.  *See* Mich. Comp. Laws § 750.110a(2).

This argument fails because it relies upon the improbable suggestion that Guilmette could have broken open McCormick's door without satisfying the element of entry, which is defined in Michigan as "any part of defendant's body [being] introduced within the house." *See People v. Gilman*, 239 N.W.2d 396, 401 (Mich. Ct. App. 1976). Guilmette's counsel had a promising mistake-of-identity defense based upon the victim's questionable identification, Guilmette's plausible alibi, and the inconsistency between the victim's description of Guilmette's actions and the testimony regarding Guilmette's inoperable driver-side door.  By contrast, a defense on the element of entry required the jury to believe that Guilmette could break open a locked door without having any part of his body enter into the house.  Guilmette's trial counsel were not required to make—or to investigate facts relevant to—this implausible argument, in order to be effective. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.  Because the mistaken identity defense was strong, and because a reasonable attorney could have concluded that an entry defense was futile, a choice to conduct only a limited investigation does not rebut the strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690; *see also Bobby v. Van Hook*, 130 S.Ct. 13, 19 (2009).  The implausibility of this argument also precludes a finding of prejudice, for there is not "a reasonable probability" that "the result of the proceeding would have been different" if counsel had presented this argument to the jury. *See Strickland*, 466 U.S. at 694.

This is all the more true because, if Guilmette's counsel had contested entry, it might have either removed the focus from or undermined the credibility of the defense's misidentification argument. *See United States v. Ryan*, 23 F. Supp. 2d 1044, 1050-51 (S.D. Iowa 1998).  Indeed, statements by Guilmette's trial counsel during closing argument support the conclusion that a focused identification defense was chosen in part

to support the credibility of the defense.  In that closing, Guilmette's counsel relied specifically on the consistency of the defense's case as a reason for the jury to find it credible.  Attorney Gatesman argued, "At no time has anyone on the defense stood up, tried to persuade, presented to you, presented a question to a witness, that would try to persuade you that what Ms. McCormick said up there happened around January 7, 1999, didn't happen."  Defense counsel also argued that the prosecution's inconsistent alternative arguments undermined the credibility of the case against Guilmette.  In rebutting the defense's alibi evidence, the prosecution suggested both that someone might have impersonated Guilmette at the methadone clinic to generate the receipt and that, even if the receipt was genuine, Guilmette could have traveled from the crime scene to the methadone clinic in the time between the crime and the issuance of the receipt. In response to these alternative arguments, the defense counsel stated, "And I think the prosecution thinks he was at the methadone clinic.  And I'll tell you why I think they think that.  Because, they investigated and they presented their positions on what we've presented."  In other words, the fact that the prosecution presented detailed evidence and arguments regarding the time line undermines the credibility of their argument that someone else might have been impersonating Guilmette at the clinic.  Together, these arguments suggested that the jury ought to find the defense more credible because defense counsel, unlike the prosecutor, had refrained from making inconsistent alternative arguments.  Counsel's limited investigation of the evidence related to entry "must be directly assessed for reasonableness" in light of this strategy, "applying a heavy measure of deference to counsel's judgments."  *Strickland*, 466 U.S. at 691.  Applying that deference, it cannot be said that counsel's choices constituted "errors so serious that counsel [were] not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.

This conclusion does not conflate the element of entry with the element of breaking.  It is possible to satisfy the element of breaking without satisfying the element of entry in other factual situations, as when someone uses a crowbar to break into a dwelling. *Cf. People v. Rodgers*, No. 225338, 2001 WL 1321598, at *1 (Mich. Ct. App. Oct. 26, 2001) (relying upon eyewitness testimony to establish entry where

circumstantial evidence indicated that the defendants used a crowbar to break into a garage). But this does not apply to the present case, where there is no suggestion that the perpetrator used any implement. A defendant would have to be extraordinarily—indeed, impossibly—graceful to break down a door manually without "any part of [that] defendant's body [being] introduced within the house." *See Gilman*, 239 N.W.2d at 401. To recognize this is not to conflate breaking with entering generally, but rather is only to notice that breaking may not be possible without entering under certain facts.

For these reasons, Guilmette has not shown that his trial counsel were ineffective, and he cannot establish that he was prejudiced by the alleged ineffectiveness. His appellate counsel was therefore also not ineffective, for "'appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis*, 351 F.3d at 745 (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Guilmette has therefore failed to establish cause and prejudice for his procedural default of his claim of ineffective assistance of trial counsel, and thus he is barred from raising that issue on habeas review.

We therefore **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

———————————

**DISSENT**

———————————

BOYCE F. MARTIN, JR., Circuit Judge, dissenting.  The majority has found that Guilmette procedurally defaulted by not bringing his claim of ineffective assistance of counsel immediately and that, even if he had, he cannot succeed on the merits of his claim.  I disagree with both conclusions and, therefore, respectfully dissent.  As to the alleged procedural default, neither the final state court ruling on the merits of this case nor the courts that heard the case on appeal mentioned a procedural bar.  Thus, under this Court's holdings in *Abela v. Martin*, 380 F.3d 915 (6th Cir. 2004), and *Ivory v. Jackson*, 509 F.3d 284 (6th Cir. 2007), *cert. denied*, — U.S. —, 128 S. Ct. 1897 (2008), Guilmette's claims for ineffective assistance of counsel are not procedurally defaulted.  As to the ineffective assistance claim, under the *Strickland* analysis, Guilmette's attorney's failure to conduct an adequate investigation constituted ineffective assistance of counsel at trial.  He neither cross-examined the state's experts nor conducted a reasonable investigation into a single photograph of a footprint, taken by a witness after the state trooper had left the scene, that constituted the only evidence of entry into the house, a necessary element of the charge of home invasion.

**A.     Guilmette is not procedurally barred from bringing his habeas claim**

Guilmette first raised his ineffective assistance claim during state collateral proceedings.  The majority contends that, because the claims raised by Guilmette in his habeas petition were raised for the first time in his state post-conviction motion for relief from judgement—and not on direct appeal—federal review of his claims is barred by procedural default.  *See supra* at 4.  To be sure "[i]t is well-settled that when a state prisoner has 'defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred' unless the petitioner can show cause for the default and prejudice because of it, or a fundamental miscarriage of justice." *Abela*, 380 F.3d at 921 (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).  Yet, a state procedural rule is an "independent" ground for precluding

federal habeas review only if the state court actually relied on the rule to bar the claim at issue. *Id.* As we have held, "a state procedural rule is an independent and adequate state ground only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." *Id.* (citing *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996)). This makes sense - procedural default is a draconian result, so it should apply only when the state court's reasoning is clear and unequivocal.

The Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal on the ground that Guilmette failed "to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." The majority errs in construing the Michigan Supreme Court's order—and the citation to M.C.R. 6.508(D) generally—as an invocation of the procedural default provision set forth in M.C.R. 6.508(D)(3). M.C.R. 6.508(D) broadly pertains to motions for relief from judgment and states that courts many not grant relief if the motion suffers from either procedural or substantive defects.

As noted above, our task is to determine whether the state court "clearly and expressly stated that its judgment rested on a procedural bar." *Sparkman*, 94 F.3d at 202. Here, as with *Abela*, the Michigan Supreme Court only referenced M.C.R. 6.508(D), generally, as the basis for denying Guilmette leave to appeal the judgment of the Michigan Court of Appeals. Although M.C.R. 6.508(D)(1), (2), and (3) list specific procedural grounds for denying a defendant relief from judgment, these procedural grounds are not the exclusive grounds for which a court may deny relief pursuant to M.C.R. 6.508(D). A court may deny relief from judgment under 6.508(D)(4) for the substantive, *i.e.* non-procedural, reason that the defendant simply failed to meet his burden of "establishing entitlement to the relief requested." As such, the Michigan courts' bare citation to M.C.R. 6.508(D) in orders denying Guilmette leave to appeal does not demonstrate that the courts denied him leave to appeal on the basis of a procedural default, much less on the procedural ground described in M.C.R. 6.508(D)(3), which the warden urges on this Court.

The majority attempts to distinguish *Abela* from the case at hand by noting that, here, both the Michigan Court of Appeals and the Michigan Supreme Court invoked M.C.R. 6.508(D) in their denial of review, while in *Abela*, the Court of Appeals had made a determination on the merits. However, this is a distinction without a difference. As we noted in *Ivory v. Jackson*, 509 F.3d 284, 292 (6th Cir. 2007), the *Abela* Court itself distinguished two prior Sixth Circuit decisions holding that a denial of relief based on M.C.R. 6.508(D) provides an adequate and independent state procedural sanction sufficient to preclude habeas review on this same basis. *Id.* at 923-24 (citing *Simpson v. Jones*, 238 F.3d 399 (6th Cir. 2000), and *Burroughs v. Makowski*, 282 F.3d 410 (6th Cir. 2002)). However, the *Abela* Court distinguished *Simpson* and *Makowski* on the ground that, in those cases, the last reasoned state court opinion that referenced anything other than M.C.R. 6.508(D) had without question denied relief on procedural grounds. *Id.* at 923. Thus, one could assume in *Simpson* and *Makowski* that the affirmance under M.C.R. 6.508(D) was an affirmance of the lower court's procedural findings. In *Abela*, however, as in this case, the lower state courts had made no procedural holdings in the last reasoned opinion, so it would be difficult to read the simple affirmance as being based on procedural grounds.

The majority relies heavily on *Munson v. Kapture*, 384 F.3d 310 (6th Cir. 2004), because in that case, as in this case, both the Michigan Court of Appeals and the Michigan Supreme Court invoked M.C.R. 6.508(D) in denying review. However, *Munson* must be distinguished for the same reason that we distinguished *Simpson* and *Makowski*. In *Munson*, the last reasoned opinion was at the post-conviction state trial court proceedings. The court denied Munson's claims, inter alia, because he "fail[ed] to show just cause why prosecutor misconduct was not raised in earlier appeals." *Munson*, 384 F.3d at 313. Thus, the last reasoned state-court decision in *Munson* was based, at least in part, on procedural grounds, so, as in *Simpson* and *Makowski*, we could

assume that the M.C.R. 6.508(D) affirmance was based on the procedural grounds cited by the trial court.**1**

The last reasoned state-court opinion issued in both *Abela* and in Guilmette's case, by contrast, explicitly adjudicated the case on the merits without any reference to procedural issues. Thus, as with *Abela*, the Michigan Supreme Court's summary order cannot possibly be interpreted solely to rely on a procedural bar, as opposed to the non-procedural reason that Guilmette simply failed to meet his burden of "establishing entitlement to the relief requested." Indeed, given the line of prior merits determinations in Guilmette's case, it is much more reasonable to presume that the Michigan Supreme Court's reference to M.C.R. 6.508(D) signaled its agreement with the lower courts' merits determinations than it is to presume that the reference signaled, for the first time in this case, the invocation of a procedural bar.**2**

## B.    Guilmette successfully showed ineffective assistance of counsel at trial.

The majority also errs in its finding that Guilmette could not show ineffective assistance of counsel. Guilmette trial counsel rendered ineffective assistance in two related ways: first, by failing to conduct a reasonable investigation into the facts, specifically by not investigating the discrepancies between the photograph of the

---

**1**The majority justifies ignoring *Abela* by implying that it is an outlier case, bracketed between *Luberda v. Trippett*, 211 F.3d 1004 (6th Cir. 2000), which preceded it, and *Munson*, which succeeded it in 2004. But I do not read *Abela* as being in any way inconsistent with these other cases and thus cannot justify reading it out of existence. To be sure, the patchwork of cases in this area is complicated, but the fact remains that each case affirms the proposition relevant in this case that we are to look to the last reasoned Michigan opinion to determine if it was based on procedural or substantive grounds.

Additionally, I take issue with the majority's statement that the it is "clear" (*supra* at 6 n.3) on what grounds the state trial court relied in *Luberda*. My only thought is that the majority bases its assumption that the state court relied solely on substantive, non-procedural grounds upon the opinion's vague pronouncement that the state court relied on "alternative grounds." *Luberda*, 211 F.3d at 1006. As this is not at all clear from the opinion, and it is possible that the state court in *Luberda* included procedural findings in their "alternative grounds," I cannot agree with the majority that *Luberda* constitutes binding precedent inconsistent with the cases that followed, *i.e.*, *Abela*.

**2**Guilmette also argues that, even if he had procedurally defaulted, his appellate counsel was deficient for failing to raise ineffectiveness of trial counsel on appeal and that this deficiency prejudiced him because, had the appellate court known of the trial counsel's oversight, there was a reasonable probability of a different outcome, satisfying the "good cause" test required to overcome procedural default under *Mapes v. Coyle*, 171 F.3d 408, 428 (6th Cir. 1999). As Guilmette's claims were not procedurally defaulted, I need not reach this claim. However, as I note below, Guilmette has successfully stated a claim for ineffective assistance of counsel at trial, and this would likely satisfy the "good cause" test to overcome any procedural default.

suspect's footprint taken by the police and the photograph of the threshold footprint taken by the homeowner after the police investigation, and, second, by failing to contest the prosecution's proofs on a necessary element of the offense of home invasion.[3]

As the majority noted, the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668  (1984), governs our analysis.  It is well-established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Strickland*, 466 U.S. at 691. The duty to investigate derives from counsel's basic function, which is "'to make the adversarial *testing* process work in the particular case.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland*, 466 U.S. at 690).  "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."  *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).  A purportedly strategic decision is not objectively reasonable "when the attorney has failed to investigate his options and make a reasonable choice between them." *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000) (citing *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991)).

Courts have not hesitated to find constitutionally ineffective assistance when counsel fails to conduct a reasonable investigation into one or more aspects of the case and when that failure prejudices his or her client.[4]  Guilmette's trial counsel's failure to conduct a reasonable investigation into the facts surrounding the photographs of the footprints that the state introduced into evidence similarly violated his Sixth Amendment

---

[3] To prove home invasion, the prosecution must show beyond a reasonable doubt that the accused entered into the home.  MICH. COMP. LAWS § 750.110a(2).

[4] *See, e.g.*, *Wiggins v. Smith*, 539 U.S. 510, 524-29 (2003) (holding that the petitioner was entitled to a writ of habeas corpus because his counsel had failed to conduct a reasonable investigation into potentially mitigating evidence with respect to sentencing because "counsel chose to abandon their investigation at an unreasonable juncture, making a fully informed decision with respect to sentence strategy impossible."); *Towns v. Smith*, 395 F.3d 251, 258-260 (6th Cir. 2005) (holding that it was ineffective assistance of counsel for defense counsel not to call a witness who could have created an alternative theory of the case); *Combs*, 205 F.3d at 287-88 (holding that defense counsel was constitutionally ineffective for failing to investigate adequately his own expert witness, who testified that, despite the defendant's intoxication at the time of the crime, the defendant nevertheless was capable of forming the requisite intent to commit the crimes); *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992) (holding that counsel was constitutionally ineffective for failing to conduct an investigation into certain physical evidence that would have undermined the prosecution's theory that the victim was shot at a distance).

right to effective assistance of counsel.  Guilmette has thus successfully satisfied both the deficiency and prejudice prongs of *Strickland*.

With regard to the deficiency prong, the facts demonstrate that counsel did not investigate the facts surrounding the footprints.  These photos were the only evidence presented of entry, a necessary element to the charge of home invasion.  Joan McCormick, the only eyewitness, did not see the perpetrator enter the house though she looked after she tripped and saw the perpetrator "running off the porch."  Her testimony—nearly the only evidence presented outside of the two, different footprints of the alleged home invasion—supports an alternate theory that the perpetrator broke down the door and ran away without entering the home and that the footprint found on the threshold was created by someone else after the perpetrator had fled.  When State Trooper Jennifer Coulter arrived, she observed footprints in the snow on the walkway and avoided them, thinking that they had been left by the perpetrator.  She photographed the clearest print that she could find and that photograph, along with expert testimony about the footprint, was introduced into evidence as the footprint of the perpetrator of the offense.  But, importantly, this photo was not proof of entrance by the perpetrator, merely proof that someone had stepped on the walkway.

It was not until after Trooper Coulter left that McCormick took a photograph of a snowy footprint on the threshold of her front entrance; this photograph was the only evidence at trial to purport to show that the perpetrator had entered the home.  Guilmette's trial counsel never even looked to see if the two photographed footprints were the same, or even similar.  Guilmette's current attorney contends that the photographs do not correspond to one another and that even a cursory investigation into the photographs would have revealed this discrepancy.  Additionally, Guilmette's trial counsel should have been on notice that he should compare the two photographs based on the fact that the second was taken by McCormick after Trooper Coulter had left and it could have been Trooper Coulter's footprint rather than the perpetrator's.  That decision not to compare the photographs was objectively unreasonable because it "was a decision made without undertaking a full investigation" into whether a comparison of

the photographs could assist in Guilmette's defense. *Combs*, 205 F.3d at 288. By failing even to compare the two, readily available photographs, Guilmette's counsel "abandoned his investigation at an unreasonable juncture, making a fully informed decision with respect to [whether such an investigation was] impossible." *Wiggins*, 539 U.S. at 527-28. Counsel should have hired an expert to examine the prints, *see Richey v. Bradshaw*, 498 F.3d 344, 363-64 (6th Cir. 2007) (finding that an expert was necessary to make an informed decision about trial strategy), and should have, at the very least, cross-examined the prosecution's footprint expert regarding the discrepancy. Trial counsel should have made an argument to the jury or the court about the discrepancy. Instead, trial counsel focused only on the state's identification of Guilmette as the perpetrator to the exclusion of all other viable arguments. This was not a strategic decision because a strategic decision necessarily involves an informed choice between two alternatives. Here, counsel was completely ignorant as to one of these alternatives due to his failure to reasonably investigate, or indeed, to investigate at all, an obvious evidentiary problem and defense to a required element of the charge. This constitutes a deficiency of counsel, satisfying the first *Strickland* prong.

With regard to *Strickland*'s prejudice prong, the record contains ample evidence indicating that, but for counsel's ineffectiveness, there is a reasonable probability that Guilmette would have been acquitted. Entry is an essential element of the charge of home invasion and the only evidence of entry was the threshold footprint photograph that McCormick took after Trooper Coulter had left her home.[5] Thus, there is a

---

[5]The majority asserts that the jury could have found entry even without the footprint in the doorway because kicking in a door without entering is "impossible" (*supra* at 9), as opposed to, apparently, using a crowbar to force open a door. It is unclear on what basis this assertion is made. It certainly is not based on anything in the record, so perhaps it is based on some heretofore unrecognized species of judicial notice based on my colleagues' extensive experience in kicking in doors. I unfortunately cannot comment on the veracity of their observation, having not had the opportunity to kick in a statistically sufficient set of doors in my lifetime.

If I were to take notice of information outside of the record, I would look to Sir Isaac Newton's Laws of Motion, with which I am marginally familiar from high school physics. If I recall correctly, according to Newton's First Law, an object in motion tends to stay in motion. This provides some support for the majority's reasoning that when a person kicks his leg at a door and the door gives way, that person's momentum should continue in the direction of the kick, necessarily causing his foot to cross the plane of the doorway. However, this Law has an important caveat: an object in motion tends to stay in motion *unless acted upon by an external force*. Similarly, under Newton's Third Law, for every action there is an equal and opposite reaction. As applied here, when a person kicks a door, the door sends an equal force in the opposite direction up the leg of the kicker, acting as the "external force" provided for in the First Law. Thus, the kicker could essentially bounce back due to the reverse force on his body so

reasonable probability that, had the jury heard an expert challenge the match of the two footprints, or even heard Guilmette's counsel cross-examine the prosecution's expert witness on the discrepancies between the photographs, the jury would have acquitted Guilmette.

Guilmette's claim of prejudice is further supported by the weakness of the prosecution's case. The Supreme Court has explained that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696; *Clinkscale v. Carter*, 375 F.3d 430, 445 (6th Cir. 2004). McCormick's eyewitness identification of Guilmette, the only solid evidence linking Guilmette to the crime, was weak and tentative, especially at trial. We have repeatedly expressed our "'grave reservations concerning the reliability of eyewitness testimony.'" *Clinkscale*, 375 F.3d at 445 (quoting *Blackburn v. Foltz*, 828 F.2d 1177, 1186 (6th Cir. 1987)). In light of the scant evidence of Guilmette's guilt, his counsel's ineffectiveness was even more prejudicial that it could otherwise have been.

Thus, I respectfully dissent.

---

that no part of him would cross the threshold, rather than falling forward through the door, as the majority suggests is a physical, and legal, certainty.

However, just as I have no basis from which to judge the majority's assertion because I have little experience in kicking in doors, I have no real basis to rely on my understanding of the physics at issue because I am a judge, not a physicist. Thus, I look solely to the evidence in the record in making my legal determinations: the circumstances regarding the disputed picture of the footprint on the threshold.