*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0308p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

CEDRIC CARTER,

*Petitioner-Appellant,*

v.

BETTY MITCHELL, Warden,

*Respondent-Appellee.*

No. 06-4238

_____

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 98-00853—Thomas M. Rose, District Judge.

Argued: December 1, 2010

Decided and Filed: September 6, 2012

Before: MARTIN, CLAY, and SUTTON, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Keith A. Yeazel, Columbus, Ohio, for Appellant. Thomas E. Madden, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Keith A. Yeazel, Columbus, Ohio, Gregory W. Meyers, OHIO PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant. Holly E. LeClair, Charles E. Willie, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

MARTIN, J., delivered the opinion of the court in which CLAY, J., joined, and SUTTON, J., joined in part. SUTTON, J. (pp. 20–24), delivered a separate opinion concurring in part and dissenting in part.

_____

**OPINION**

_____

BOYCE F. MARTIN, JR., Circuit Judge. Cedric Carter appeals the district court's denial of his petition for a writ of habeas corpus. An Ohio jury convicted Carter

of murdering a store clerk while robbing a convenience store and recommended that the court impose a sentence of death. Carter now asserts fifty grounds for relief in support of his petition for a writ of habeas corpus, all of which the district court either denied on the merits or found to be procedurally defaulted. We granted a certificate of appealability on two issues: (1) whether the state courts improperly used the "nature and circumstances" of the offense as aggravating, rather than mitigating, factors; and (2) whether the district court properly dismissed Carter's ineffective assistance of counsel claims because he procedurally defaulted those claims in state court. While the district court correctly denied habeas relief on the first issue, it erred in finding Carter's ineffective assistance of trial counsel claims to be procedurally defaulted. Therefore, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** for further proceedings.

## I.

We rely on the facts as determined by the state appellate court on direct review. *See, e.g.*, *Girts v. Yanai*, 501 F.3d 743, 749 (6th Cir. 2007); *see also* 28 U.S.C. § 2254(e)(1) (providing that in a habeas proceeding "a determination of a factual issue made by a State court shall be presumed to be correct" unless the applicant rebuts the presumption "by clear and convincing evidence"). On direct appeal, the Ohio Supreme Court, *State v. Carter*, 651 N.E.2d 965, 969–70 (Ohio 1995), set forth the following facts:

> In the early morning hours of April 6, 1992, Frances Messinger was murdered while working alone as a clerk at a United Dairy Farmers convenience store ("UDF") in Cincinnati. . . . At approximately 2:15 a.m. on April 6, 1992, Carol Blum, a waitress working directly across the street from the UDF, dialed 911 and reported that she had just seen two black males running from the UDF. At trial, Blum testified that immediately prior to calling 911, she saw two men inside the UDF—one man in front of the counter with both arms extended toward the register with hands together pointing to something, and the second man behind the counter near the register. She saw the man behind the counter bend down, and then observed both men run out. The waitress did not see Messinger standing at any time while she was observing the incident. When Messinger's body was discovered shortly thereafter, an unmelted ice-cream cone was found on the floor of the UDF in the area in front of the counter near the exit doors.

On April 7 one Kenny Hill surrendered himself to authorities in connection with the Messinger murder. Based on information provided by Hill, police obtained a search warrant for an apartment at which Carter was temporarily residing. Carter was arrested in the early morning hours of April 8, 1992 during the course of the search which followed. During the search the police recovered the murder weapon, a .38 caliber Smith & Wesson five-shot revolver manufactured between 1877 and 1891, the hammer of which must be pulled back manually prior to the firing of each round.

Following his arrest, Carter was taken to police headquarters to be interviewed. At approximately 3:50 a.m. Carter signed a waiver of rights form, which recited his rights as delineated in *Miranda v. Arizona. . . .* During the tape-recorded statement which followed, Carter admitted being present at the UDF during the course of the robbery, but initially identified Hill as the shooter. The police then discontinued taping the interview, and told Carter his statement was inconsistent with statements police had obtained from other witnesses. Upon resumption of the taping, Carter admitted that he was the shooter at the UDF robbery.

At trial the state and the defense agreed to many of the facts surrounding the robbery. Both parties are in accord that three men were involved: Carter, Hill (who also entered the UDF store), and Virgil Sims (who drove the car used by Carter and Hill before and after the murder). It is undisputed that Carter shot two times and that one bullet lodged in a carton of cigarettes in a cabinet behind the cash register, while the second struck Messinger in her forehead, killing her.

Carter testified at the trial and admitted involvement in the crime. Carter testified that he entered the UDF first (without a gun) and that Hill followed shortly thereafter, carrying with him the .38 caliber Smith & Wesson revolver. Carter ordered an ice cream cone, and while Messinger was standing at the cash register to accept payment for the cone, Hill passed the gun to Carter. Carter denied, however, that he had intended to kill Messinger. He testified that he had been a heavy user of crack cocaine; that he used significant amounts of alcohol, marijuana and crack cocaine during the period leading up to the murder; and that Hill was his supplier. Although Carter admitted that he entered the store with the intent to rob it, he testified that he and Hill had not talked about robbing the store until immediately prior to the robbery. He further testified that he never intended to be the one to hold the gun during the robbery. He admitted, however, that he knew the gun had bullets, and that Hill had showed him earlier in the day how to shoot it. He further admitted that before robbing the UDF the three had participated in "a lot" of robberies of drug dealers that same evening, and that only Hill had

used the gun to threaten the victims in those robberies while Carter remained in the car. Carter testified that he first fired the gun at the floor to scare Messinger as she pushed the gun away and shut the register drawer. Carter testified he told Messinger to open the cash register, but she refused. He stated that Hill then suggested leaving, and that as they turned to leave, he fired a second shot when Messinger began fumbling in an apparent attempt to push an alarm button. Carter maintained consistently that he did not aim at Messinger, but instead aimed to fire a shot by her to scare her, and never intended to shoot her.

Medical testimony established that Messinger was killed as a result of a bullet wound which entered her forehead slightly left of the midline. The bullet traveled sharply left to right, and front to rear, with a slight upward angle. No stippling or gunpowder burns were found on Messinger's skin, indicating that the gun had been fired from a distance greater than one foot.

In 1992, an Ohio jury convicted Carter of aggravated murder and aggravated robbery. The trial court adopted the jury's recommendation and sentenced Carter to death. On direct appeal, the Ohio Court of Appeals affirmed Carter's convictions and sentence, *State v. Carter*, No. C-920604, 1993 WL 512859 (Ohio Ct. App. Nov. 3, 1993) (unpublished opinion), as did the Ohio Supreme Court, *Carter*, 651 N.E.2d at 980. The United States Supreme Court denied certiorari. *Carter v. Ohio*, 516 U.S. 1014 (1995). Carter raised a number of issues at all levels of his direct appeal, including that his trial counsel were constitutionally ineffective at the penalty phase by eliciting unfavorable mitigation evidence and failing to call Carter's mother to testify about his upbringing. Carter also alleged that the trial court violated his rights by failing to provide the jury with the transcript of his mitigation expert's testimony as the jury requested.

Carter subsequently filed a petition for post-conviction relief in state court, which the trial court denied. The Ohio Court of Appeals affirmed the trial court's denial of Carter's petition, *State v. Carter*, No. C-960718, 1997 WL 705487 (Ohio Ct. App. Nov. 14, 1997) (unpublished decision), and the Ohio Supreme Court denied Carter's request for further review, *State v. Carter*, 690 N.E.2d 1287 (Ohio 1998) (unpublished table decision). The United States Supreme Court denied certiorari. *Carter v. Ohio*, 525 U.S. 848 (1998). In these petitions Carter again asserted numerous violations of his

constitutional rights including that he had been denied the effective assistance of counsel at the penalty phase of trial.

In 1998, Carter filed a petition in federal court, alleging fifty grounds for habeas relief. One of these claims asserted that Carter received constitutionally ineffective assistance of counsel during his direct appeal. Because Carter had not yet pursued this claim in the Ohio courts, in 1999 he filed an application to reopen his direct appeal under Ohio Rule of Appellate Procedure 26(B). This was several years after the filing deadline and the Ohio Court of Appeals denied his application on the basis that Carter had not demonstrated good cause for his untimely filing. *State v. Carter*, No. C-920604, 1999 WL 33441359 (Ohio Ct. App. Oct. 21, 1999) (unpublished opinion). Carter did not appeal that decision to the Ohio Supreme Court.

In 2000, Carter filed a second application to reopen his direct appeal under Rule 26(B). The Ohio Court of Appeals again denied this application, and the Ohio Supreme Court affirmed this decision on the basis of res judicata. *State v. Carter*, 757 N.E.2d 362 (Ohio 2001).

In 2003, Carter filed a second petition for post-conviction relief in the state trial court, arguing that his mental retardation precluded his execution under *Atkins v. Virginia*, 536 U.S. 304 (2002). The trial court denied this petition but the Ohio Court of Appeals reversed and ordered the trial court to conduct an evidentiary hearing. *State v. Carter*, 813 N.E.2d 78 (Ohio Ct. App. 2004). However, Carter subsequently dismissed this petition voluntarily.

After the collateral proceedings in state court ended, the district court addressed Carter's habeas petition. The court ultimately accepted the recommendation of the magistrate judge to whom it had referred the matter and dismissed Carter's petition as meritless. *Carter v. Mitchell*, No. 1:98-CV-853, 2006 WL 2334853 (S.D. Ohio Aug. 10, 2006). However, the district court granted Carter a certificate of appealability on his twenty-seventh ground for relief, the issue of whether the state courts improperly used the "nature and circumstances" of the offense as aggravating, rather than mitigating, factors. Upon review, we granted a certificate of appealability on the issue

of whether the district court properly dismissed Carter's ineffective assistance of counsel claims because he procedurally defaulted those claims in state court.

## II.

Carter argues that the Ohio sentencing court relied on the nature and circumstances of his offense as a nonstatutory aggravating factor in violation of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment.  While the sentencing court impermissibly and improperly considered nonstatutory aggravating factors, this error was cured by the Ohio Supreme Court's independent review, which affirmed Carter's death sentence after considering only permissible factors.

### A.     Standard and Framework for Review

We review a district court's habeas rulings de novo.  *Simpson v. Jackson*, 615 F.3d 421, 428 (6th Cir. 2010).  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d), when a state court adjudicates a claim on the merits, we can grant the writ only if the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state-court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A decision is an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*; *see Simpson*, 615 F.3d at 428.

When the state court does not address the merits of a claim, the AEDPA provisions do not apply and a federal court reviews the petitioner's legal claim de novo.

*Maples v. Stegall*, 340 F.3d 433, 436–37 (6th Cir. 2003) (citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).  However, the Supreme Court recently held that the provisions of section 2254(d) do apply when the state court's decision is unaccompanied by any explanation.  *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 784 (2011).  In that situation, a habeas petitioner may meet his or her burden by "showing there was no reasonable basis for the state court to deny relief." *Id.*

The Ohio Supreme Court's opinion on Carter's direct appeal independently reweighed the aggravating and mitigating factors, but did not provide any reasoned analysis in denying this claim.  651 N.E.2d at 970.  The Ohio Court of Appeals had addressed this claim in somewhat greater detail, but did so solely in the context of state law, even though Carter had raised federal constitutional considerations as part of his claim.  1993 WL 512859, at *12–13.  Despite the lack of analysis, *Richter* requires that we review the decisions of the Ohio state courts to see if the result is contrary to or an unreasonable application of federal law.  *See* 131 S. Ct. at 784; *see also Vasquez v. Jones*, 496 F.3d 564, 569 (6th Cir. 2007).

**B.    Whether the Sentencing Court's Consideration of Nonstatutory Aggravating Factors Violated Carter's Constitutional Rights.**

Carter maintains that the trial court improperly utilized the nature and circumstances of his offense as an aggravating factor to justify imposing the death penalty in violation of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment.  Under Ohio law, the death penalty may be imposed only if one or more statutory aggravating factors are present.  Ohio Rev. Code Ann. § 2929.04 (West 2011); *State v. Wogenstahl*, 662 N.E.2d 311, 320–21 (Ohio 1996).  Ohio law permits the consideration of the nature and circumstances of the offense as mitigating factors, but they are not statutory aggravating factors.  *Wogenstahl*, 662 N.E.2d at 321 (interpreting the Ohio code and holding that "it is wholly *improper* for the state to argue or suggest that the nature and circumstances of the offense are 'aggravating circumstances'").  While Carter's claim stems from an alleged violation of Ohio law, "[s]tate-law errors may warrant *habeas* relief if the errors 'rise for some other reason to

the level of a denial of rights protected by the United States Constitution.'" *Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010) (quoting *Barclay v. Florida*, 463 U.S. 939, 957–58 (1983)).

Here, Carter's claim implicates the Eighth Amendment because statutory aggravating factors play the "constitutionally necessary function" of circumscribing the class of persons eligible for the death penalty, such that the death penalty is not imposed in an arbitrary and capricious fashion. *See Zant v. Stephens*, 462 U.S. 862, 878–79 (1983). In addition, this claim implicates the Due Process Clause because a "defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process." *Gardner v. Florida*, 430 U.S. 349, 358 (1977); *see, e.g.*, *Hoffner*, 622 F.3d at 495–96 (determining whether the state court's consideration of the nature and circumstances of the offense as an aggravating factor violated petitioner's due process rights).

The record is replete with evidence that the trial court considered nonstatutory aggravating factors, including the victim's status as a wife and mother; Carter's physical appearance; the fact that Carter was an unemployed, "lazy" "hoodlum" who had taken the "productive life" of the victim; and the court's inference that "the last moments in the life of Frances Messinger . . . must have been filled with great horror and pain." However, this Court has previously held that the "consideration of a non-statutory aggravating circumstance, even if contrary to state law, does not violate the Constitution." *Smith v. Mitchell*, 348 F.3d 177, 210 (6th Cir. 2003) (citing *Barclay*, 463 U.S. at 939); *see Hoffner*, 622 F.3d at 495–96; *Slagle v. Bagley*, 457 F.3d 501, 521 (6th Cir. 2006).

Additionally, any error the sentencing court may have made in this regard is no longer relevant because of the Ohio Supreme Court's independent review. If a sentencing court considered impermissible factors when balancing the aggravating factors against the mitigating factors, a state appellate court may cure that error by independently reweighing the factors without considering those that are improper.

*See, e.g.*, *Slagle*, 457 F.3d at 521. Here, the Ohio Supreme Court's opinion reweighed the aggravating and mitigating factors without considering the nature and circumstances of the offense as an aggravating factor. Therefore, any error the sentencing court may have made by considering these nonstatutory aggravating factors did not violate Carter's constitutional rights, and the district court correctly denied habeas relief on Claim 27 of Carter's petition for habeas relief.

## III.

The district court also accepted the magistrate judge's recommendation that Carter procedurally defaulted his claims based on having received constitutionally ineffective assistance of counsel. However, the record reveals that Carter properly raised his claims based on ineffective assistance of trial counsel at the penalty phase in both his direct appeal and state collateral proceedings, and the district court erred by concluding otherwise. While the district court correctly determined that Carter's fiftieth ground for relief, based on ineffective assistance of appellate counsel, is procedurally defaulted, Carter properly preserved the claims based on ineffective assistance of trial counsel during the mitigation stage raised in his twenty-eighth and twenty-ninth grounds for relief. Therefore, we remand for the district court to determine in the first instance whether Carter is entitled to the writ based on his counsel's performance at the mitigation stage of the proceedings.

### A.        Standard and Framework for Review

We review de novo a district court's determination that a claim is procedurally defaulted. *Dietz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004); *Munson v. Kapture*, 384 F.3d 310, 313 (6th Cir. 2004); *see Gall v. Scroggy*, 603 F.3d 346, 351 (6th Cir. 2010). "[A] petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate review procedures." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)) (internal quotation marks omitted). To avoid procedurally defaulting a claim, the prisoner must have exhausted his or her

remedies in state court. *O'Sullivan*, 526 U.S. at 842; *see also* 28 U.S.C. § 2254(b)(1)(A). Once a federal claim has been "fairly presented" at the first possible opportunity within "one complete round of the State's established appellate review process," the claim has been exhausted. *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004); *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004). If a prisoner failed to exhaust his or her state court remedies and state law would no longer permit the petitioner to raise the claim when he or she files a petition for habeas relief in federal court, the claim is procedurally defaulted. *Williams*, 380 F.3d at 967.

Under Ohio law, a claim must be presented on direct appeal if all of the facts necessary to develop the claim were available at the time. Otherwise, the claim will be barred by res judicata. *See Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *see Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002).

Similarly, "[u]nder the procedural default doctrine, a federal court is generally barred from considering an issue of federal law arising from the judgment of a state court if the state judgment rests on a state-law ground that is both independent of the merits of the federal claim and an adequate basis for the state court's decision." *Munson*, 384 F.3d at 313–14 (internal quotation marks and alterations omitted). "In situations in which a petitioner has failed to fairly present federal claims to the state courts, and a state procedural rule now prohibits the state court from considering them, the claims are considered procedurally defaulted." *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009).

A petitioner may overcome a state's procedural default defense by showing "cause" and "prejudice" for his or her failure to comply with the state's procedural rule. *See Ege v. Yukins*, 485 F.3d 364, 378 (6th Cir. 2007).

**B.     Ground for Relief 50:  Ineffective Assistance of Appellate Counsel**

Carter asserts that he was denied the right to effective assistance of appellate counsel. In Ohio, claims of ineffective assistance of appellate counsel are not cognizable in the normal course of post-conviction proceedings, and must be raised through an

application to reopen the direct appeal pursuant to Ohio Rule of Appellate Procedure 26(B). *State v. Murnahan*, 584 N.E.2d 1204, 1208–09 (Ohio 1992); *see, e.g.*, *Hoffner*, 622 F.3d at 504. Rule 26(B) provides that applications to reopen based on ineffective assistance of appellate counsel must be filed "within ninety days from the journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." Ohio R. App. P. 26(B).

Carter did not file his application to reopen with the Ohio Court of Appeals until June 9, 1999. This was over five years after the journalization of the judgment on direct appeal, and the court dismissed Carter's application on the basis that it was untimely and he had not shown good cause for the late filing. Carter did not appeal this decision to the Ohio Supreme Court.

Subsequently, Carter filed another application under Rule 26(B) on September 28, 2000. The Ohio Court of Appeals denied Carter's petition on the basis that the rule does not permit successive applications. The Ohio Supreme Court affirmed, holding that because Carter had not appealed the initial denial, res judicata barred consideration of this application.

Carter notes that there is some uncertainty in our case law as to whether Ohio regularly applied the timeliness requirement in Rule 26(B) at the time of his initial application such that it may be an independent and adequate state procedural rule that can trigger a procedural default. *See Hoffner*, 622 F.3d at 504 (collecting cases). However, regardless of the timeliness issue, Carter's failure to appeal the Court of Appeals' initial denial of his application forecloses our review. Because Carter did not appeal the denial of his initial Rule 26(B) application, he did not give the Ohio Supreme Court a full or fair opportunity to rule on it. *Cf. O'Sullivan*, 526 U.S. at 842. Therefore, the district court correctly concluded that Carter's fiftieth ground for relief based on ineffective assistance of counsel is procedurally defaulted.

Counsel's failure to appeal this decision is not cause to excuse this procedural default. A Rule 26(B) application is a collateral challenge to which petitioners do not have the right to assistance of counsel. *See Lopez v. Wilson*, 426 F.3d 339, 352 (6th Cir.

2005) (en banc).  Because Carter had no right to counsel at this stage of the proceedings, counsel's deficient performance cannot establish cause to excuse the procedural default. *Cf. Abdus-Samad v. Bell*, 420 F.3d 614, 632 (6th Cir. 2006) (holding that ineffective assistance of state post-conviction counsel was not cause to excuse a procedural default). Therefore, because Carter procedurally defaulted this claim and has not established cause to excuse that default, we may not address it.  Additionally, as the district court concluded, because this claim is procedurally defaulted, any ineffectiveness of appellate counsel cannot be "cause" to excuse other grounds for relief that Carter procedurally defaulted.

## C.    Claims 28 & 29:  Ineffective Assistance of Counsel at the Penalty Phase

Among the several grounds for relief that Carter raised in his petition for a writ of habeas corpus, ground twenty-eight is based on his having received ineffective assistance of counsel during the mitigation phase of trial.  Relatedly, ground twenty-nine is based on counsel's ineffectiveness resulting in the court excluding evidence from the mitigation stage of Carter's trial.  The district court concluded that both of these grounds were procedurally defaulted.  These two grounds for relief fall within the additional certificate of appealability we granted.

The district court erred by finding that Carter failed to raise these issues before the state court.  In contrast to the district court's conclusion, the record plainly reveals that Carter pursued claims on these grounds during both his direct appeal and state-collateral proceedings.  While Carter did not raise these claims in his subsequent application to reopen his direct appeal under Rule 26(B), there is no requirement that he assert these claims in that proceeding.  Therefore, his failure to do so does not negate his having fully pursued these claims through one complete round of state review.

The Warden conceded in the return of writ that Carter had presented these claims, in part, to the state courts.  This is consistent with Carter's briefs to the Ohio courts that addressed these issues.  Similarly, the Ohio Supreme Court's opinion on Carter's direct appeal addressed these issues, 651 N.E.2d at 977–78, as did the Ohio Court of Appeals' opinion on Carter's collateral challenge, 1997 WL 705487, at *4, 6–7.

Therefore, because the record reveals that Carter properly presented these claims to the state courts during his direct appeal and state post-conviction proceedings, Carter did not procedurally default these claims.

The Warden's reliance on *Davie v. Mitchell*, 547 F.3d 297 (6th Cir. 2008), is misplaced. In *Davie*, this Court announced the unremarkable proposition that "a Rule 26(B) application based on ineffective assistance cannot function to preserve the underlying substantive claim." *Id.* However, this case presents no such problem. Carter failed to properly pursue his Rule 26(B) application, which is why, as explained above, we must affirm the district court's determination that Carter procedurally defaulted his fiftieth ground for relief based on ineffective assistance of appellate counsel. However, Carter did not need to, nor attempt to, preserve grounds twenty-eight or twenty-nine through his Rule 26(B) application. These claims had already been squarely presented to the state courts through "one complete round of the State's established appellate review process." *Williams*, 380 F.3d at 967. Therefore, the claims had been exhausted and were suitable for review by the federal district court when Carter filed his petition for a writ of habeas corpus.

In this respect, these claims are indistinguishable from Carter's claim based on the sentencing court having improperly considered nonstatutory aggravating factors. That claim, along with Carter's ineffective assistance of counsel at the mitigation stage claims, was not raised in his Rule 26(B) application. However, regardless of any procedural defaults caused by the improper handling of his Rule 26(B) application, Carter properly raised these claims through Ohio's appeals process and they are not procedurally defaulted.

The dissent incorrectly characterizes Petitioner's litigation position when it argues that Petitioner forfeited and defaulted the portions of Claims 28 and 29 relating to Petitioner's mitigation expert and the failure to seek his mother's testimony. Rather than forfeit Claims 28 and 29 by using them as support for Claim 50, Petitioner alleged Claims 28 and 29 as independent bases of relief and for the alternative purpose of demonstrating prejudice as a result of appellate counsel's alleged ineffective assistance.

Federal Rule of Civil Procedure 8(d)(3), which governs this habeas petition, allows a petitioner to "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3); *see* Habeas Rule 12. There is no reason why Petitioner could not raise Claims 28 and 29 as free-standing grounds for relief and in support of the claim that appellate counsel's alleged deficiency prejudiced him in pursuing Claims 28 and 29. Petitioner never expressly forfeited Claims 28 and 29 before making this assertion and did not do so by pleading Claim 50 in the alternative.

The dissent relies on a statement from Petitioner's post-evidentiary hearing brief filed before the district court, which referred to "direct appeal counsel's [failure] to timely present [Claims 28 and 29] to the state court of appeals." Pet'r Post-Hr'g Br. 15, R. 124; *see* Dissenting Op. ¶ 3. The district court read this brief in the same manner. *See Carter v. Mitchell*, No. 1:98-CV-853, 2006 WL 2334853, at *27 (S.D. Ohio Aug. 10, 2006) (concluding that Petitioner "concede[d] that his appellate counsel failed to present [Claims 28 and 29] on direct appeal," relying on the same passage from Petitioner's brief referenced above). The dissent and district court treat Petitioner's statement as a concession that Claims 28 and 29 were defaulted, but that treatment is inconsistent with other portions of the record.

Other portions of Petitioner's briefing in the court below support our view that Claims 28 and 29 served this dual purpose. As we noted, his original habeas petition clearly stated Claims 28 and 29 as grounds for relief independent of Claim 50. And Petitioner could have hardly conceded a default of Claims 28 and 29 when, in the motion for certificate of appealability he filed before the district court, he specifically asked for a certificate of appealability on his preservation of Claims 28 and 29. *See* App. 2575. Petitioner argued "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling [with respect to his] Twenty-Eighth [and] Twenty-Ninth . . . Causes of Action." *See* App. 2576.

We are not bound by the district court's misreading of the record. Petitioner clearly raised Claims 28 and 29 in his petition, never waived them, used them alternatively in support of Claim 50, and challenged the district court's conclusion when

he sought a certificate of appealability.  The fact that Petitioner did not argue those claims as vigorously as he argued Claim 50, or that the district court incorrectly construed Petitioner's arguments as a forfeiture, should not lead us to an unduly restrictive interpretation of Petitioner's litigation position.

Based on this incorrect reading of the record in the court below, the dissent argues that Petitioner's certificate of appealability does not encompass the argument that Claims 28 and 29 are not defaulted.  Indeed, if one reads Petitioner's litigation position in the court below to consist of a forfeiture and waiver of Claims 28 and 29, then one cannot but help but read Petitioner's motion to expand his certificate of appealability, as well as the certificate we granted, to omit Claims 28 and 29.  But, just as he did in the district court, Petitioner linked Claims 28 and 29 to Claim 50, all the while raising them as independent claims.

Petitioner's motion to expand the certificate of appealability begins by recounting the errors trial counsel made in the mitigation phase of his trial, some of which form the basis of Claims 28 and 29.  *See* Mot. to Expand 3–6.  On the basis of these errors, the motion argues that Petitioner "brought these facts to the attention of Ohio's courts" but that the state courts "applied unreasonable rules to avoid adjudicating the merits of these claims, and those courts did so in a way that equals Carter's exhaustion of these claims, which makes them ripe for federal merits review and habeas relief."  *Id.* 6.  This argument alone serves as a contention that Claims 28 and 29 were not defaulted.  Through this point in the motion to expand the certificate of appealabilty Petitioner makes no mention of his claim of ineffective assistance of appellate counsel (Claim 50).

Petitioner's motion then argues that appellate counsel was ineffective and, as a result, that appellate counsel's ineffectiveness was cause for Petitioner's purported failure to raise Claims 28 and 29 on direct appeal.  But intertwined with this argument is Petitioner's sustained contention that Claims 28 and 29 were not defaulted.  For example, the motion stated that Petitioner:

> takes the position that the ineffective assistance of
> appellate counsel claims (Fiftieth Cause of Action) and

> *those claims* [including Claims 28 and 29] *for which he has asserted that ineffective assistance of appellate counsel constitutes [ ] cause are exhausted and therefore not defaulted* since they fall within the purview of the Ohio Supreme Court's independent review process, which renders them "impliedly exhausted."

*Id.* 9 (emphasis added).  This passage, like others in Petitioner's filings, challenges the district court's procedural default conclusion regarding both Claim 50 and the claims underlying Claim 50, namely, Claims 28 and 29.  And as a result of this argument, we certified the question of whether the district court erred in concluding that Petitioner defaulted his claims of ineffective assistance of counsel.

Petitioner's posture was the same in his briefing before this Court.  The dissent refers to a portion of Petitioner's brief in which he argues that "ineffective assistance of appellate [counsel] constitute[s] cause for [Petitioner's] failure to present claims . . . 28, 29 . . . to Ohio courts."  Pet'r Br. 51.  The dissent interprets this statement as a waiver of his argument that Claims 28 and 29 were not defaulted.  But this reading ignores two aspects of Petitioner's brief.

First, Petitioner made the statement cited above in response to the district court's "conclu[sion] that since it found that [Petitioner's] ineffective assistance of appellate counsel claim was procedurally defaulted, that claim could not be a basis for finding 'cause' for his failure to raise before Ohio courts the ineffectiveness of trial counsel." *Id.*  The statement to which the dissenting opinion refers is not a concession; it is a response to a ground of the district court's decision on Claim 50 which does not erode Petitioner's position on Claims 28 and 29.

Second, in a fashion similar to his motion to expand, Petitioner argued "that his ineffective assistance of appellate counsel claim (Fiftieth Cause of Action) *and those claims for which he has asserted ineffective assistance of appellate counsel as cause for any purported procedural default are eligible for merit[s] review by this Court*," which expressly include Claims 28 and 29.  *Id.* at 36 (emphasis added).  Petitioner goes on to

position his merits arguments on Claims 28 and 29 within his argument that Claim 50 was not defaulted.

Petitioner's decision to position his argument regarding Claims 28 and 29 within his argument regarding Claim 50 is not tantamount to a waiver of Claims 28 and 29. Far from it. However successfully Petitioner executed a rather sophisticated method of making this alternative argument has nothing to do with whether Petitioner made the argument in the first place. Thus, Petitioner's litigation position from his loss at the court below through his argument in this Court has been that he did not default Claims 28 and 29 and, alternatively, that any default of Claim 50 prejudiced him as a result of his inability to assert Claims 28 and 29.

Carter also has not, in these two grounds for relief, expanded the scope of his claims from what he presented to the state courts. "To fairly present a claim to a state court a petitioner must assert both the *legal* and factual basis for his or her claim." *Williams*, 460 F.3d at 806; *see Clinkscale*, 375 F.3d at 437. In order to satisfy this requirement, and avoid a procedural default, the petitioner's federal habeas petition must be based on the same theory presented in state court and cannot be based on a wholly separate or distinct theory. *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). For example, in *Wong*, one of the grounds the petitioner asserted in support of her petition for habeas relief was based on allegations that she had received constitutionally ineffective assistance of counsel. *Id.* at 319. In the state court proceedings Wong had alleged only that counsel's performance was deficient for failing to pursue an insanity defense. *Id.* at 319. However, in federal court, Wong additionally alleged that counsel was constitutionally ineffective for neglecting to undertake additional investigation into whether an alternate expert might have concluded that she was legally insane. *Id.* at 321. This Court held that the portion of the claim based on not undertaking a complete investigation was procedurally defaulted because Wong had not presented it to the state courts. *Id.* at 322; *accord Williams*, 380 F.3d at 968 (holding that petitioner's claims to the state courts alleging prosecutorial misconduct in improperly vouching for the

credibility of a witness were insufficient to preserve claims based on other instances of prosecutorial misconduct).

Carter's twenty-eighth and twenty-ninth grounds for relief were fairly presented to the state courts and are not based on new or distinct theories insofar as they relate to the preparation of Carter's mitigation expert and the failure of Carter's mother to testify at his mitigation proceedings. On direct appeal to the Ohio Court of Appeals, Carter asserted in Assignment of Error X that:

> THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF DEFENDANT-APPELLANT IN ENTERING A SENTENCE OF DEATH WHEN DEFENDANT-APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE UNITED STATES CONSTITUTION, AMENDMENT VI.
>
> Issue 1. Has an accused been given effective assistance of counsel when his defense attorneys, in the penalty phase, elicit testimony from a mitigation expert when said testimony, taken as a whole, is very unfavorable to the accused?
>
> Issue 2. Has an accused been given effective assistance [of] counsel when his attorneys, lacking much in mitigatory evidence, fail to have the accused's mother testify on his behalf?

Similarly, Carter presented these issues in his direct appeal to the Ohio Supreme Court as Propositions of Law number X and XI. And, Carter raised these issues again in his petition for post-conviction review as his Sixth, Ninth, and Eleventh Causes of Action.

In his petition for habeas corpus to the federal district court, Carter's twenty-eighth ground for relief asserts that he was denied the effective assistance of counsel at the mitigation phase of his trial. The claim goes into some additional detail about the deficiencies of Dr. Chiappone's testimony and how, in Carter's view, it was caused by his failure to perform a diligent inquiry into Carter's background. Additionally, Carter also specifically raises as part of this ground for relief counsel's failure to have his mother testify. Similarly, Carter's twenty-ninth ground for relief raises the issue of counsels' ineffectiveness leading to the exclusion of evidence from the mitigation stage

and, specifically, the trial court's refusal to provide the jury with a transcript of Dr. Chiappone's testimony. Therefore, because these claims were raised through a complete round of Ohio's appellate process, they are not procedurally defaulted. Because the district court erred in concluding otherwise, we remand the matter to the district court for it to consider the merits of these claims in the first instance and whether either entitles Carter to a writ of habeas corpus.

## IV.

The district court correctly found that Carter had procedurally defaulted his fiftieth ground for relief based on ineffective assistance of appellate counsel. The district court also properly denied Carter's twenty-seventh ground for habeas relief, based on the sentencing court's improper consideration of non-statutory aggravating factors. However, Carter did not procedurally default his twenty-eighth or twenty-ninth grounds for relief. Therefore, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** for the district court to consider whether Carter is entitled to a writ of habeas corpus based on counsel's performance at the penalty phase of trial or the trial court's exclusion of evidence at the mitigation phase.

---

### CONCURRING IN PART/DISSENTING IN PART

---

SUTTON, Circuit Judge, concurring in part and dissenting in part.  There is much to admire in the majority's opinion—its convincing rejection of Carter's aggravating-factors argument and its convincing rejection of his argument that he did not default a claim of ineffective assistance of appellate counsel.  But instead of stopping there and resolving the two claims raised by Carter on appeal, the court grants appellate relief on a claim of its own making (and preserving):  ineffective assistance at the mitigation phase of the trial.  There are several problems with this approach:  the claim exceeds the scope of the certificate of appealability; Carter did not raise the claim in the district court; Carter did not raise the claim on appeal; and the claim is meritless.  Other than that, it ought to give a court pause to refuse to excuse a procedural default and yet to grant relief on a related, but doubly forfeited, claim.  This kind of analysis, needless to say, has a high degree of difficulty, and I am afraid the majority cannot pull it off.  I must respectfully dissent.

Exhibit A is the certificate of appealability, a jurisdictional prerequisite to review, *see* 28 U.S.C. § 2253(c), which does not encompass this theory of relief.  The district court granted a COA on one claim:  the state trial court's alleged misuse of aggravating factors at the mitigation stage.  It did not grant a COA on today's theory of relief, and Carter did not seek one.  At our court, Carter moved to expand the COA to cover four reasons why we should excuse the procedural default of his ineffective-assistance-of-mitigation-counsel claims:  (1) ineffective assistance of appellate counsel established cause and prejudice for the default; (2) Carter had a due process right to effective appellate counsel during the Ohio-law *Murnahan* proceedings; (3) the Ohio Supreme Court "impliedly" addressed the claims by rejecting the claims he did bring; and (4) a miscarriage of justice would arise if the claims were defaulted.  *See* Mot. to Expand COA at 6–15.  Missing from his motion, as the majority effectively concedes, was *any argument* that he never defaulted the claims in the first place because he fairly

presented them in state court on direct appeal.  Consistent with what Carter requested, and did not request, we expanded the COA to reach "*an* additional issue," noting that "*the issue* raised in Carter's present motion warrants further review[:] . . . whether the district court properly dismissed Carter's ineffective assistance of counsel claims because he *procedurally defaulted* those claims in state court."  COA Order at 2 (emphases added).  Neither the district court's COA nor our expansion of it nor Carter's COA's applications raise a claim that Carter in fact fairly presented a claim of ineffective assistance of mitigation counsel in the state courts.

Exhibit B is Carter's litigation position at the district court, where he forfeited, indeed  waived, the argument that he presented this claim in the state courts.  His brief in the district court concedes the "failure of [Carter's] direct appeal counsel to timely present the following meritorious issues to the state court of appeals," and listed these claims—Claims # 28 and 29—as two of the "meritorious issues" never exhausted in the state courts. R.124 at 15.  Trying to overcome this exhaustion problem, he argued that his "state appellate counsels' failure to raise" his ineffective-assistance-of-trial-counsel claim "amounted to ineffective assistance of appellate counsel." *Id.* at 13.  Nowhere did he argue that in fact he presented his claims in the state appellate courts.  He instead asked the district court to excuse the default.  All of this amounts to a forfeiture of the claim and a waiver to boot. *See Akins v. Easterling*, 648 F.3d 380, 396–97 (6th Cir. 2011).

Exhibit C is Carter's litigation position in this court, where he also forfeited and waived this argument.  The forfeiture:  he does not argue in his appellate briefs that the district court should have granted the writ on the ground that he fairly presented his ineffective-assistance-of-mitigation-counsel claim to the state courts.  The waiver:  he says that "ineffective assistance of appellate [counsel] constitute[s] cause for his *failure to present* claims . . . 28, 29 . . . to Ohio courts."  Carter Br. at 51 (emphasis added). Here, too, he argues only that ineffective assistance of appellate counsel provides cause to excuse this default.  He never mentions the argument the majority now makes.  At our court, then, this argument also was forfeited and waived. *See United States v. Johnson*,

440 F.3d 832, 845–46 (6th Cir. 2006).  Anyone who doubts me should read his appellate briefs for themselves.  At the relevant pages, he says not a word about this theory of relief.  *See* App't Br. at 36–51; Reply Br. 8–10.  Indeed, the whole point of his argument is to contrast the "omitted strong claims" (nine of the eleven) with the two (weak) claims that were raised on direct review.  Reply Br. 8–9.  Carter surely is allowed to make alternative arguments.  But to do so, he (and not the Court) must make them.

Exhibit D is the flawed nature of this argument, which helps to explain why the individual with the greatest incentive to raise the point—Carter—never made it himself.  In contending that Carter presented this claim—Claims # 28 and 29—to the state courts, the majority invokes Carter's Assignment of Error X at the state court of appeals.  To "fairly present" a claim—here Carter's claim of ineffective assistance of counsel at the mitigation phase—the applicant must present both the "factual and legal underpinnings of the claim" to the state courts.  *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009).  A claim for federal habeas relief thus cannot turn "upon a different allegedly ineffective action [from] the claim presented to the state courts."  *Caver v. Straub*, 349 F.3d 340, 347 (6th Cir. 2003).  Otherwise, state courts would not have a "fair opportunity" to address constitutional claims, defeating the whole point of exhaustion.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999).

In Error X, Carter raised two arguments:  (1) trial counsel performed ineffectively in using Dr. Chiappone as a mitigation witness; and (2) trial counsel performed ineffectively by not calling Carter's mother to testify.  The state courts rejected both claims on the merits.

When the time came to file his federal habeas petition, Carter remained free to frame his claims as he saw fit.  Had he raised just these two issues as independent habeas claims, I could agree that he preserved them.  But for reasons of his own—perhaps the prospect of withstanding AEDPA review on the two claims—he expanded his ineffective-assistance claims (in Claims 28 and 29) to a wholesale attack on all aspects of counsel's mitigation strategy. Habeas Claims 28 and 29 raise eleven theories of relief: Counsel (1) failed to obtain a "real" mitigation expert, (2) failed to obtain a neurological

examination, (3) failed to research school records or call an education expert, (4) failed to call school officials, (5) failed to call a drug-addiction specialist, (6) failed to inform the jury that Carter's mother had applied for disability benefits on his behalf, (7) failed to obtain psychiatric records, (8) failed to call his mother to testify, (9) failed to call his siblings to testify, (10) should not have permitted Dr. Chiappone to testify and (11) should not have given a disjointed closing argument. *See* App. at 58–63.

Precedent does not allow a habeas applicant to raise two theories of mitigation ineffective assistance in the state courts, then mix in nine new, unexhausted theories when he arrives in federal court. Such "mixed petitions" are not permitted. *Rose v. Lundy*, 455 U.S. 509, 510 (1982). Habeas claimants are masters of their theory of relief, and if they present an "ineffective assistance of counsel claim based on one ground" in state court they may not present "an ineffective assistance of counsel claim based on another ground" in federal court. *Bell v. Bell*, 460 F.3d 739, 761 (6th Cir. 2006), *vacated on other grounds*, 512 F.3d 223, 237 (6th Cir. 2008) (en banc). "[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court," *Wong* v. *Money*, 142 F.3d 313, 322 (6th Cir. 1998), as the majority seems to acknowledge by relying on this exact case, Maj. Op. at 17–18.

Here, the omnibus ineffectiveness claims in 28 and 29 that the majority gives life rely on a far broader theory—and a far broader set of factual bases—than the claims presented to the Ohio courts. With the exception of Allegations 8 and 10, Carter never presented the rest of these claims—any of them—to the state courts. The majority downplays this, describing the unexhausted claims as merely "some additional detail about the deficiencies of Dr. Chiappone's testimony and how, in Carter's view, it was caused by his failure to perform a diligent inquiry into Carter's background." Maj. Op. at 19. But that is like saying chess is just checkers with a few additional details: at some point the additions so outweigh the commonalities that you have a new game. Carter's "entirely new underlying" ineffective-assistance-of-counsel allegations resulted in a "fundamental alteration to the legal claim already considered by state courts," and thus

I "cannot say that the state courts had the first opportunity to review the claim." *Bell*, 460 F.3d at 761. That is why Carter acknowledges his "post-trial counsel[] fail[ed] to properly exhaust claims based on these facts," App. at 2577–80 (listing facts mentioned for the first time after post-conviction), and explains why he never made the argument the majority now embraces.

In the final analysis, the majority grants relief based on a claim that we do not have jurisdiction to hear, that was not raised below or at the court of appeals, and that compromises basic habeas principles of preservation and exhaustion. That is not an everyday occurrence, and it is one from which I must respectfully dissent.